Joel **SILVERMAN**, Commissioner,
**Indiana Bureau of Motor Vehicles**, Appellant–Respondent,

v.

Richard **FIFER**, Appellee–Petitioner.

No. 43A05–0504–CV–193.

Court of Appeals of Indiana.

Nov. 14, 2005.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, for Appellant.

Kurt Bentley Grimm, Grimm & Grimm, Auburn, for Appellee.

## OPINION

FRIEDLANDER, Judge.

Joel Silverman, in his capacity as the Commissioner of the Indiana Bureau of Motor Vehicles (the BMV), appeals an order of the trial court ordering the BMV to issue a restricted driver's license to Richard Fifer, who is employed as a truck driver. The BMV contends the trial court's order was in violation of federal law and thus erroneous.

We reverse.

We note at the outset that this case involves an appeal of an order to issue a hardship license while Fifer's operator's license was suspended. Fifer's operator's license, and thus, presumably, his commercial driver's license (CDL), were reinstated during the pendency of this appeal. Therefore, the question is moot as to this particular controversy. We agree with the BMV, however, that this case is liable to recur and involves issues related to public safety. In such cases, we may, at our discretion, make an exception to the mootness doctrine and address the merits of the case. *See, e.g., Gibson v. Hernandez,* 764 N.E.2d 253 (Ind.Ct.App.2002). We opt to do that here.

The underlying facts are not in dispute. Fifer was employed by Swihart Trucking in Silver Lake, Indiana as an over-the-road truck driver. Sometime in late 2004, probably near the middle of December, the BMV suspended Fifer's operator's license, and thus presumably would suspend his CDL as well, because he refused to take a breath test, which we believe must have occurred after he had been stopped for an alcohol-related driving offense.[1] On January 13, 2005, Fifer filed in the Kosciusko Circuit Court a "Petition for Issuance of Restricted Driving Privileges, Reason of Hardship, Pursuant I.C. 9–24–15–1, ET SEQ." *Id.* at 10. Fifer asserted the following grounds for his request: "That your Petitioner earns his living by driving a truck, and in the absence of privileges to drive, would be unable to earn his living as he is presently accustomed to doing." *Id.* at 11. The trial court granted the request. Because the language employed in the order granting the request is pertinent to our discussion, we reproduce the relevant portion of the order here:

3. That the Petitioner's driving privileges have been suspended, based upon information provided to the Indiana Bureau of Motor Vehicles by the Kosciusko Superior Court 2, indicating that there is probable cause to believe that the Petitioner operated a motor vehicle with blood alcohol content in excess of .08%.

4. That the Petitioner has never been suspended, in this or in any other jurisdiction, for similar reasons or under similar circumstances.

5. That the Petitioner is employed at Swihart Trucking ... as an over the road truck driver, and, therefore, cannot list a precise route by which he travels, due to the nature of his employment.

6. That the Petitioner earns his living by driving a truck, and in the absence of privileges to drive, would be unable to earn his living as he is presently accustomed to doing.

7. That the Petitioner has dependents and his inability to drive and consequently earn a living will prevent him from pursuing his employment and support said dependents. Such lack of support will work a tremendous hardship upon the dependents of the Petitioner.

8. That the Petitioner has met with Max Milks of DeKalb Professional Counseling as required by I.C. 9–24–15–6.5(a)(5).

9. That the Petitioner, Richard Fifer, is currently thirty-four (34) years of age, having been born on November 23, 1970.

IT IS THEREFORE ORDERED, the Commissioner of the Indiana Bureau of Motor Vehicles issue to Richard Fifer a hardship license, pursuant to the provisions of I.C. 9–24–15–1, et. Seq. [sic], permitting said Richard Fifer to operate a motor vehicle while in the conduct of his employment.

*Id.* at 7–8. The BMV appeals the order to grant Fifer's request for a hardship license.

Both parties agree this is essentially a question of statutory construction. The statutes in question include Ind.Code Ann. § 9–24–15–1 (West, PREMISE through 2005 Public Laws) through I.C.

---

[1] The record and appendix do not shed much light on the underlying offense. The appendix contains Fifer's Indiana Official Driver Record, an official document generated by the BMV that lists, among other things, a history of Fifer's driving infractions and offenses. It reflects that Fifer's license was suspended on December 13, 2004 for "Chemical Test Failure." *Appellant's Appendix* at 21. We assume the infraction actually occurred on or shortly before that date. For purposes of this appeal, however, the precise date and details of the infraction are irrelevant.

§ 9–24–15–10 (West, PREMISE through 2005 Public Laws), which collectively govern the granting of restricted driver's licenses when a person's license has been suspended, and 49 U.S.C. § 31311, which forbids the granting of a CDL under certain circumstances present here.[2] Questions involving statutory interpretation are matters of law for the court to decide; "we are neither bound by, nor are we required to give deference to, the trial court's interpretation." *KPMG, Peat Marwick, LLP v. Carmel Fin. Corp., Inc.,* 784 N.E.2d 1057, 1060 (Ind.Ct.App.2003).

Silverman contends that, in *Gibson v. Hand,* 756 N.E.2d 544, 545 (Ind.Ct.App. 2001), we have already resolved this question in Silverman's favor. In that case, Hand's driving privileges were administratively suspended due to a chemical test failure, pursuant to Ind.Code Ann. § 9–30–6–9(b) (West, PREMISE through 2005 Public Laws). He filed a petition requesting that he be issued a restricted driving permit because he was employed as a truck driver. The BMV opposed Hand's petition. Citing I.C. § 9–30–6–9 and I.C. § 9–30–5–10, the trial court granted the petition. The court entered an order directed to the BMV stating that Hand "[was] not prohibited from operating a commercial motor vehicle." *Id.* at 545.

■■■ We began our analysis in *Gibson* by noting that the trial court's interpretation of the Indiana provisions was correct, but irrelevant. We held that those statutes are preempted by federal law, specifi-

cally 49 U.S.C. § 31311. In language applicable to the instant case, we explained:

> Although Indiana law does not deny Hand the issuance of a restricted CDL, the BMV has established that Indiana will be subject to a loss of federal funds if it issues Hand a restricted CDL. Thus, it would be impossible to issue Hand a restricted CDL in compliance with the law of Indiana without conflicting and/or creating an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, i.e. 49 U.S.C.A. § 31311(a)(10).

*Gibson v. Hand,* 756 N.E.2d at 547. We see no meaningful distinction between the facts in *Gibson* and those of the instant case. This would seem to settle the matter. Fifer contends, however, that *Gibson* differs from the instant case in one important respect, and therefore is not controlling. The gist of Fifer's argument is that the trial court's order did not do what the BMV claims that it did. Fifer explains it thus:

> Fifer's petition does not request the issuance of a restricted CDL, it simply requests that he be granted restricted driving privileges. Based upon Fifer's petition, the trial court ordered that the BMV issue Fifer "a hardship license, pursuant to the provisions of I.C. 9–24–15–1, et. Seq. [sic], permitting said Richard Fifer to operate a motor vehicle while in the conduct of his employment."

In effect, the trial court ordered the BMV to issue to Fifer a hardship license which complies with the provisions of I.C. § 9–24–15–1 *et seq.* To the extent

---

**2.** 49 U.S.C. 31311(A)(10) states:

**(10)(A)** The State may not issue a commercial driver's license to an individual during a period in which the individual is disqualified from operating a commercial motor vehicle or the individual's driver's license is revoked, suspended, or canceled.

**(B)** The State may not issue a special license or permit (including a provisional or

temporary license) to an individual who holds a commercial driver's license that permits the individual to drive a commercial motor vehicle during a period in which—

**(i)** the individual is disqualified from operating a commercial motor vehicle; or

**(ii)** the individual's driver's license is revoked, suspended, or canceled.

the BMV has issued Fifer a restricted CDL rather than a restricted operator's license, the trial court has not erred, and in fact the BMV has violated I.C. § 9–24–15–7 by failing to comply with the trial court's recommendation.

\* \* \* \* \*

[N]othing in the federal law cited by the BMV prevents the BMV from issuing Fifer a restricted operator's license as the federal law only prohibits a State from issuing a CDL to a person whose driver's license is suspended, or from issuing to a person who holds a CDL a special license or permit to operate a commercial motor vehicle during a period that the CDL holder's license is suspended.

*Appellee's Brief* at 3–4. At best, the foregoing argument is self-contradictory; at worst, it is disingenuous.

It seems to us that Fifer's argument can be interpreted one of two ways. Common to both arguments is an acknowledgment that the trial court may not order the BMV to issue a hardship or special CDL to a person whose license has been suspended. Thus, Fifer can only be arguing (a) that he did not ask the court for a hardship CDL, but instead a hardship operator's license, or (b) that he did not ask for a hardship CDL, but instead a special license or permit that would allow him to operate a commercial vehicle while his operator's license—and thus his CDL—was suspended. His premise is flawed. Although his petition for a hardship license did not request a hardship CDL by name, that is unmistakably what he sought. There is simply no other reasonable interpretation of the petition's purpose.

To review, Fifer identified himself as an over-the-road truck driver whose license had been suspended. We can find no official statutory definition of "over-the-road truck driver," but a brief internet search confirms what common knowledge suggests: An over-the-road truck driver is someone who drives heavy trucks for a long period of time (i.e., longer than the average work day). *See, e.g.,* http://www.ortruck ing.org/careers. htm# types. Indeed, we note that the other terms synonymous with "over-the-road" truck driver are "long-haul" driver and "heavy truck" driver. Those adjectives are clearly descriptive. Therefore, as used in Fifer's petition, "over-the-road driver" refers to someone who (a) drives heavy trucks (b) for extended periods of time and travels beyond the immediate locale. "Heavy truck" in this context clearly means a semi tractor-trailer. Because Fifer identified himself as an over-the-road truck driver, as that phrase is commonly understood, he was informing the trial court that he drives semi-tractor-trailer trucks for a living.

A semi tractor-trailer, as described in Ind.Code Ann. § 9–13–2–31(a)(1) (West, PREMISE through 2005 Public Laws), is classified as a commercial motor vehicle. Noting that he "earn[ed] his living by driving a truck," Fifer claimed he "would be unable to earn his living as he [was] presently accustomed to doing" if he were not capable of continuing in that line of work. *Appellant's Appendix* at 11. Thus, he requested "restricted driving privileges, for purposes of allowing him to continue to practice the trade by which he earns his living." *Id.* at 12. This can be understood to mean only that Fifer was asking the trial court to order the BMV to grant him a license that would permit him to drive a semi tractor-trailer.

We return now to Fifer's claim that he did not ask to be issued a CDL of any kind, hardship or otherwise, and the related claim that the trial court did not order such. The above discussion regarding the nature of Fifer's employment is intended to illuminate the true nature of his re-

quest. Granted, he did not use the term "commercial driver's license", in his request for relief. There can be no doubt, however, that he *did* ask for its functional equivalent. According to I.C. § 9–24–1–6(a) (West, PREMISE through 2005 Public Laws), "an individual must hold a valid Indiana commercial driver's license issued by the bureau under this article to drive a commercial motor vehicle after March 31, 1992, upon an Indiana highway." We can find no applicable exception to this requirement. What he sought, regardless of the label attached to it, was a license that would function as a CDL. That is exactly what the trial court accomplished in ordering the BMV to "issue ... a hardship license ... permitting Richard Fifer to operate a motor vehicle while in the conduct of his employment." *Appellant's Appendix* at 8.

We conclude that the trial court's order is affirmable, and Fifer's argument on appeal will prevail, only if we elevate form over substance. We cannot pretend that Fifer did not seek a special CDL merely because he did not request it by that name. Similarly, compliance with the provisions of 49 U.S.C. § 31311 is not achieved merely by omitting the label "commercial driver's license" from an order granting the rights and privileges that license confers. In the instant case, we will not ignore the effect of the court's order merely because its language did not contain the magic words, "commercial driver's license." To the contrary, for purposes of the issue before us, we find that Fifer petitioned the court to order the BMV to issue him a license that would permit him to continue working for his employer as a driver of a "commercial motor vehicle", as that term is defined in I.C. § 9–13–2–31. The court ordered the

BMV to issue such a license. Per statute, the only license that would enable Fifer to engage in that employment is a CDL.

In summary, for the reasons set out above, we reject the contention that Fifer did not ask for what the BMV granted— the functional equivalent of a CDL. We also reject the argument that the trial court did not, in effect, order the BMV to issue such a license. The question before us, then, is whether the trial court may order the BMV to grant a hardship license that functions as a CDL, but is not so labeled. We think it indisputable that a— if not the—primary purpose of the Commercial Motor Vehicle Safety Act is highway safety. *See Center for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin.*, 342 F.Supp.2d 1 (D.D.C.2004). The purpose of forbidding the issuance of a CDL to a person whose license is suspended under the enumerated circumstances has nothing to do with the official designation of the license itself, and everything to do with preventing that person from operating a commercial motor vehicle when it might be dangerous to do so. Thus, irrespective of labels and terminology, 49 U.S.C. § 31311 should be interpreted as a prohibition against the issuance of any license, however designated, that would authorize a person to operate a commercial motor vehicle under the circumstances set out in 49 U.S.C. § 31311.[3] The trial court's order in the instant case was erroneous.

Judgment reversed.

VAIDIK, J., and SULLIVAN, J., concur.

---

**3.** Our decision today does not preclude the issuance of a restricted operator's permit, so long as that permit does not authorize the

permit holder to operate a commercial motor vehicle.