**INDIANA BUREAU OF MOTOR VEHICLES and State of Indiana, Appellants–Intervening Parties,**

v.

**Brent ORANGE, Appellee–Defendant.**

No. 32A04–0711–CR–642.

Court of Appeals of Indiana.

July 2, 2008.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Brian J. Johnson, Hostetter & O'Hara, Brownsburg, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Intervenor, the Indiana Bureau of Motor Vehicles (the "BMV"), appeals the trial court's denial of its motion to correct error holding that Brent Orange ("Orange") was entitled to his plea-negotiated probationary driving privileges after Orange, who held a commercial driver's license ("CDL"), was convicted of operating a noncommercial vehicle while intoxicated ("OWI"). The issue before us is whether Indiana law prohibits probationary driving privileges for a driver who holds a CDL and is convicted of OWI while driving a noncommercial vehicle.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Orange pled guilty to OWI as a Class C misdemeanor. The conviction administratively disqualified Orange's CDL. Howev-

---

1. We held oral argument on June 3, 2008. We commend counsel on their oral and written advocacy.

er, as part of Orange's negotiated plea agreement, the trial court granted him probationary driving privileges.[2]

The BMV petitioned to intervene and filed a motion to correct error claiming that the trial court erred in granting probationary driving privileges because Indiana law prohibits the granting of probationary driving privileges to a person holding a CDL. Orange responded, contending that his OWI conviction disqualified his CDL, permitting the court to authorize probationary driving privileges to his underlying operator's license. The trial court agreed. The BMV now appeals.

## DISCUSSION AND DECISION

The issue before us is whether the IC 9–30–5–9.5 prohibits granting probationary non-commercial driving privileges to a driver with a CDL when he is convicted of OWI in a noncommercial vehicle. The interpretation of a statute is a question of law for the courts and is reviewed under a *de novo* standard. *Manigault v. State*, 881 N.E.2d 679, 687 (Ind.Ct. App.2008). The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or "unless the construction is plainly repugnant to the intent of the legislature." IC 1–1–4–1; *Clark v. Hunter*, 861 N.E.2d 1202, 1210 (Ind.Ct.App.2007). However, if a statute is susceptible to more than one interpretation, it is ambiguous. *Avant v. State*, 779 N.E.2d 538, 540 (Ind.Ct.App.2002). If a statute is ambiguous, then courts must "give effect, and implement the intent of the legislature."

*Id.* In doing so, courts must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result. *Id.* at 540–41.

IC 9–30–5–9.5 provides, "... probationary driving privileges under this chapter do not apply to a person who holds a commercial driver's license in accordance with the federal Motor Carrier Safety Improvement Act of 1999."

The BMV argues that, because Orange had a CDL, he was excluded from having probationary driving privileges pursuant to IC 9–30–5–9.5. The BMV claims that the trial court's ruling rendered IC 9–30–5–9.5 meaningless because it permitted a person holding a CDL to have probationary driving privileges. The purpose of IC 9–30–5–9.5, the BMV claims, is to prohibit the holder of a CDL, who is convicted of an alcohol-related driving offense, from receiving any probationary driving privileges.

In response, Orange argues that IC 9–30–5–9.5 "should be interpreted as prohibiting a probationary license only with respect to Orange's [commercial driving] privileges." *Appellee's Br.* at 4. Orange claims that the trial court's decision was correct because his CDL privileges were disqualified upon his OWI conviction, and therefore, he did not "hold" a CDL at the time the trial court granted him probationary driving privileges.[3]

To promote safe travel, to lower the probability and severity of CMV accidents throughout the United States and to en-

---

2. Orange's probationary driving privileges restricted his right to drive for 180 days, limiting it to only to and from work and imposing other probation requirements.

3. Orange also contends that denying the holders of CDLs probationary operators privileges would be a denial of equal protection and his privileges and immunities as secured by the United States and Indiana constitutions. Because we resolve this case on statutory construction grounds, we do not reach Orange's constitutional arguments.

sure that persons responsible for driving commercial motor vehicles ("CMV")[4] are qualified to operate their vehicles, the federal government passed the Motor Carrier Safety Improvement Act of 1999 ("MCSIA"), Pub.L. No. 106–159, § 4, 113 Stat. 1749 (1999). To ensure federal support in highway funding, Indiana enacted IC 9–24–6–2, which incorporated by reference the provisions of the MCSIA and required the BMV to adopt various rules to carry out these provisions and to otherwise regulate persons required to hold CDLs. In particular, IC 9–24–6–2(b) provides, "The rules must carry out 49 U.S.C. 521, 49 U.S.C. 31104, 49 U.S.C. 31301 through 31306, 49 U.S.C. 31308 through 31317, and 49 CFR 383 through 384, and may not be more restrictive than the federal Motor Carrier Safety Improvement Act of 1999 (MCSIA) (Public Law 106–159.113 Stat. 1748)."

A number of sections of MCSIA, the regulations promulgated thereunder and the Indiana Code are called into play by this case:

49 U.S.C. 31311(A)(10) provides:

(A) The State may not issue a commercial driver's license to an individual during a period in which the individual is disqualified from operating a commercial motor vehicle or the individual's driver's license is revoked, suspended, or canceled.

(B) The State may not issue a special license or permit (including a provisional or temporary license) to an individual who holds a commercial driver's license that permits the individual to drive a commercial motor vehicle during a period in which—

(i) the individual is disqualified from operating a commercial motor vehicle; or

(ii) the individual's driver's license is revoked, suspended, or canceled.

IC 9–24–6–2(d) also provides that "49 CFR 383 through 384 are adopted as Indiana law." 49 C.F.R. § 383.51(b), states, "... for a first time conviction ... while operating a non-CMV, a CDL holder must be disqualified from operating a CMV for [one] year." Disqualification means "a holder of a CDL ... must not drive a CMV." 49 C.F.R. § 383.51(a).

The issuance of restricted driving privileges to holders of CDL's was before this court in *Gibson v. Hand,* 756 N.E.2d 544, 547 (Ind.Ct.App.2001) and *Silverman v. Fifer,* 837 N.E.2d 186, 189 (Ind.Ct.App. 2005). In *Hand,* we held that the trial court erred in granting Hand a restricted commercial driver's license after his license was administratively suspended due to a chemical test failure. In *Fifer* we held that Fifer could not receive a hardship license for commercial purposes while his OWI charge was pending. In both cases, the court looked to MCSIA and its intent to prevent the holder of a CDL whose license is disqualified from operating a commercial motor vehicle during the period of such disqualification. In neither case did the court restrict the issuance of a restricted operators permit. Indeed, in *Fifer,* the court observed in a footnote: "Our decision today does not preclude the issuance of a restricted operator's permit, so long as that permit does not authorize

---

**4.** A commercial motor vehicle is defined as "a motor vehicle used in commerce to transport passengers or property that ... has a gross weight of at least 26,001 pounds..., or a lesser gross vehicle weight rating ... but not less than a gross vehicle weight rating of 10,001 pounds;" or used to transport hazardous materials. 49 U.S.C. § 31301(3). 49 U.S.C. § 31301(6) separately defines "driver's license" as "a license issued by a State to an individual authorizing the individual to operate a motor vehicle on highways."

the permit holder to operate a commercial motor vehicle." *Fifer*, 837 N.E.2d at 191, n. 3.

MCSIA does not restrict a CDL holder's right to drive noncommercial vehicles. *See Fifer*, 837 N.E.2d at 189. 49 C.F.R. § 383.51, which is incorporated by reference in IC 9–24–6–2, disqualifies only commercial driving privileges for CDL holders convicted of OWI in a noncommercial vehicle. IC 9–30–5–9.5 states that "probationary driving privileges ... do not apply to a person who holds a[CDL] *in accordance with the federal [MCSIA]*." (Emphasis added). Finally, IC 9–24–6–2(b) provides, "The rules [regulating commercial driver's licenses] must carry out 49 U.S.C. 521, 49 U.S.C. 31104, 49 U.S.C. 31301 through 31306, 49 U.S.C. 31308 through 31317, and 49 CFR 383 through 384, and *may not be more restrictive than the federal Motor Carrier Safety Improvement Act of 1999 (MCSIA)* ... ". (Emphasis added).

The foregoing provisions convince us that in adopting MCSIA and in promulgating the regulations thereunder the federal government did not intend to regulate noncommercial driving privileges. They also convince us that in adopting IC 9–30–5–9.5 our General Assembly did not intend to impose any greater restriction than that imposed by MCSIA. Accordingly, we hold the trial court did not err in issuing a probationary license to Orange to operate non-commercial vehicles.

The BMV's major concern was that if Orange was granted probationary driving privileges, he would still hold his CDL, and it would appear that he would be authorized to drive a commercial motor vehicle.

However, a person who is granted probationary driving privileges on one's regular license, pursuant to IC 9–30–5–12, does not receive probationary driving privileges until thirty days after the person's driving privileges have been suspended. The BMV must comply with the court's recommendation to suspend a license under IC 9–30–5–12, and there is nothing that prevents the BMV from issuing a restrictive driver's license setting out the driver's restrictions, much as it now does in regard to hardship licenses pursuant to IC 9–24–15–7.[5]

Affirmed.

BAILEY, J., and CRONE, J., concur.

---

5. During oral argument, the question was raised whether the State, through the BMV, had the right to intervene and challenge a plea agreement entered into by the State, through its prosecutor, which provided for probationary driving privileges, regardless of whether it was legal to do so. Because Orange did not object to the BMV's motion to intervene, we do not address this issue; however, we do caution the State to consider its contractual obligations in future proceedings.