RILEY, Judge.

STATEMENT OF THE CASE

[1] Appellants-Defendants, KS & E Sports and Edward J. Ellis (Ellis)[1] (collectively, KS & E) appeal the trial court’s denial of their motion for judgment on the pleadings against Appellee-Plaintiff, Dwayne H. Runnels (Runnels), in which KS & E Sports asserted immunity from suit pursuant to Indiana Code section 34-12-3-3(2), arguing that Runnels’ damages resulted from the criminal misuse of a firearm by a third party.
[2] We affirm.[2]

ISSUE

[3] KS & E Sports raised one issue on interlocutory appeal, which we restate as: Whether Runnels’ Complaint stated a claim on which relief can be granted.

FACTS AND PROCEDURAL HISTORY

[4] On December 12, 2011, Runnels, a patrol officer for the Indianapolis Metropolitan Police Department, initiated a traffic stop of a vehicle allegedly involved in a recent armed robbery and shooting. As Runnels approached the vehicle, Demetrious Martin (Martin) exited the driver side of the vehicle with a handgun and fired two shots. One bullet missed Runnels but struck his patrol car. The second bullet pierced Runnels’ hip and lodged in his upper pelvis. Runnels returned fire, killing Martin.
[5] An ATF trace on the Smith & Wesson handgun used by Martin revealed that it was purchased at the KS & E Sports retail store in Indianapolis on October 10, *944 2011, two months prior to the shooting. It is alleged that Martin, a convicted felon who could not legally purchase a gun, obtained the handgun through an unlawful straw sale. Martin and Tarus E. Blackburn (Blackburn) entered the KS & E Sports store together and Martin selected the handgun in the presence of Blackburn and a KS & ,E Sports’ employee. Martin and Blackburn then left the store only to return later that afternoon. Upon their return, only Blackburn entered KS & E Sports and completed the firearms purchase paperwork of the handgun previously selected by Martin. Blackburn paid the purchase price of $325 in cash. Once outside the store, Blackburn transferred the handgun to Martin for $375.[3]
[6] On December 10, 2013, Runnels filed his Complaint against KS & E Sports, Ellis, and Blackburn for “damages resulting from KS & E’s negligent, reckless, and unlawful sale of a Smith & Wesson .40 caliber handgun to ‘straw buyer’ Blackburn and the negligent entrustment of that firearm to Blackburn and [Martin], who used the Smith & Wesson Handgun to shoot and harm [Runnels].” (Appellant’s App. p. 10). Runnels asserted claims of negligence, negligent entrustment, negligence per se, negligent hiring/training/supervision, conspiracy, public nuisance, and piercing the corporate veil.
[7] On June 4, 2014, after answering the Complaint, KS & E filed its motion for judgment on the pleadings pursuant to Indiana Trial Rule 12(C) “on the grounds that [Ind.Code] § 34-12-3-3(2) requires immediate dismissal of this case.” (Appellant’s App. p. 36). Following a hearing, the trial court summarily denied KS & E’s motion on October 21, 2014. The trial court subsequently granted KS & E’s motion to certify its ruling for interlocutory appeal. This court accepted jurisdiction on February 20, 2015.
[8] Additional facts will be provided as necessary.

DISCUSSION AND DECISION

[9] KS & E contends that the trial court erred when it denied its motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C). A motion for judgment on the pleadings pursuant to T.R. 12(C) attacks the legal sufficiency of the pleadings. Davis ex rel. Davis v. Ford Motor Co., 747 N.E.2d 1146, 1149 (Ind.Ct.App.2001), trans. denied. In reviewing a trial court’s decision on a motion for judgment on the pleadings, this court conducts a de novo review. Id. The test to be applied when ruling on a T.R. 12(C) motion that raises the defense of failure to state a claim upon which relief can be granted is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. Id. In applying this test, the court may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice. Id. at 1149. “The ‘pleadings’ consist of a complaint and an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint.” Consol. Ins. Co. v. Nat’l Water Servs., LLC, 994 N.E.2d 1192, 1196 (Ind.Ct.App.2013) (quoting Waldrip v. Waldrip, 976 N.E.2d 102, 110 (Ind.Ct.App.2012)). “Pleadings also consist of any written instruments attached to a pleading.” See *945 T.R. 10(C) (“A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes”). As such, a motion for judgment on the pleadings theoretically is directed towards a determination of the substantive merits of the controversy. Davis, 747 N.E.2d at 1150. We will affirm the trial court’s grant of a T.R. 12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. Id at 1149.
[10] In our de novo review of the trial court’s denial of a motion for judgment on the pleadings, then, we must consider whether Runnels’ Complaint is legally sufficient to support relief under any circumstances. In his Complaint, Runnels advances several claims, sounding in negligence and nuisance, and focuses on the harm that KS & E proximately caused through them alleged wrongful and unlawful conduct by entrusting a handgun to a straw purchaser.
[11] In total, Runnels’ Complaint presents KS & E with seven claims for relief. Specifically, Runnels asserts that KS & E breached its “duty to exercise reasonable care on selling firearms and to refrain from engaging in any activity that would create reasonably foreseeable risks of injury to others.” (Appellant’s App. p. 21). As such, KS & E knew or reasonably should have known that Blackburn was not the intended purchaser of the handgun. In a similar light, Runnels brings a claim of negligent entrustment, 'contending that “KS & E and its employee(s) wantonly permitted Blackburn to acquire possession of the Smith & Wesson handgun under circumstances in which it knew or should have known that Blackburn would use the handgun in a manner that would create a substantial and unacceptable risk of physical injury to others.” (Appellant’s App. p. 15). As a third Count, Runnels asserts that based on the illegal straw sale, KS & E committed negligence per se, followed by a claim of negligent hiring, training and supervision because “KS & E placed its employee(s) in a position to cause foreseeable harm to the public by wantonly failing to implement adequate protocols for training and supervising its employee(s) to prevent unlawful straw sales to individuals such as Blackburn[.]” (Appellant’s App. p. 28). Runnels also claims to have incurred damages resulting from' a conspiracy “to unlawfully and unreasonably sell firearms without exercising ordinary care in order to make a profit.” (Appellant’s App. p. 29). Besides claims based on negligence, Runnels presents a public nuisance assertion because “[b]y negligently, recklessly, and/or intentionally selling vast quantities of firearms in a manner that ensures a steady flow of firearms in large quantities to illegal traffickers, the illegal secondary market, criminals, juveniles; and others prohibited by law from having firearms and/or persons with criminal purposes, KS & E has negligently and/or knowingly participated in creating and maintaining an unreasonable interference with the rights held in common by the general public, constituting a public nuisance under Indiana law[J” (Appellant’s App. p. 21). Finally,' Runnels attempts to pierce the corporate veil because the company was used by its owner to promote illegal activities in violation of state, and federal law.
I. Negligence Claims
[12] The elements of a negligence action which have long been recited by courts in Indiana and elsewhere are duty, breach, causation, and harm. Estate of Heck v. Stoffer, 786 N.E.2d 265, 268 (Ind. 2003). Following Webb v. Jarvis, 575 N.E.2d 992 (Ind.1991), the duty issue became viewed in terms of the balance of foreseeability, public policy, and the rela *946 tionship between the parties. Where a duty is already recognized, it is to be followed and we need not turn to a balancing test of factors to determine whether a duty exists. N. Ind. Pub. Serv. v. Sharp, 790 N.E.2d 462, 465 (Ind.2003). “Here, precedent has established that a custodian of firearms owes a duty to act with reasonable care to see that the weapons do not fall into the hands of people known to be dangerous.” City of Gary ex rel. King v. Smith & Wesson Corp., 801 N.E.2d 1222, 1241-42 (Ind.2003). In Estate of Heck, our supreme court recognized a duty on the part of an owner of a gun to exercise reasonable care to prevent the weapon from falling into hands known to be dangerous. Estate of Heck, 786 N.E.2d at 270. As such, KS & E had a duty to Runnels to ensure that the Smith & Wesson handgun did not fall into the hands of convicted felons.
[13] However, at the time the handgun was used, it was no longer in the control of KS & E. Under standard negligence doctrine, in order for a defendant to be liable for a plaintiff’s injury, the defendant’s act or omission must be deemed to be a proximate cause of that injury. City of Gary, 801 N.E.2d at 1243. Proximate cause in Indiana negligence law has two aspects. The first—causation in fact—is a factual inquiry for the jury. If the injury would not have occurred without the defendant’s negligent act or omission, there is causation in fact. Id. at 1243-44. A second component of proximate cause is the scope of liability. That issue, which is also within the province of the trier of fact, turns largely on whether the injury “is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.” Id. (citing Bader v. Johnson, 732 N.E.2d 1212, 1218 (Ind.2000)). Under this doctrine, liability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omissions. Control Techniques, Inc. v. Johnson, 762 N.E.2d 104, 108 (Ind.2002). Under this comparative fault theory, the trier of fact can allocate fault to multiple contributing factors based on their relative factual causation, relative culpability, or some combination of both. Id. at 109.
A crime involving the use of a gun may be attributable in part to an unlawful sale, but it also requires an act on the part of the criminal. Among the defendants, the retailers are the closest link in the causal chain to the criminal act. But even these dealers may not be the sole cause of the injuries from the illegal use of the weapon, and in many cases will not bear any share of the fault.
City of Gary, 801 N.E.2d at 1244.
[14] Runnels contends that KS & E and its employees were aware that Blackburn was an illegal straw purchaser and the ultimate recipient of the handgun was Martin, a convicted felon. Therefore, Runnels claims that it was reasonably foreseeable that this unlawful and negligent sale would cause injuries and harm to him. While there may be issues of proximate cause, or, as some courts put it, “remoteness” of damage, we cannot say that Runnels stated an insufficient claim. City of Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416, 768 N.E.2d 1136, 1144 (2002). However, whether the claim can be substantiated is an issue left for another day. We reach a similar conclusion with respect to Runnels’ contention of negligent supervision of employees and negligent entrustment.
[15] With respect to Runnels’ negligence per se allegation, we turn to Rubin v. Johnson, 550 N.E.2d 324 (Ind.Ct.App.1990). In Rubin, we noted that “[t]he *947 unexcused or unjustified violation of a duty-proscribed by statute constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.” Id. at 329. Also, where a statute is enacted to ensure the safety of others, its violation constitutes negligence per se. Id.
[16] The Indiana statutes regulating the transfer and possession of handguns were enacted by the legislature to protect the public from those who would use such weapons in a dangerous or irresponsible manner. See I.C. §§ 35-47-2-7; 35-47-2.5-16; Matthews v. State, 237 Ind. 677, 148 N.E.2d 334, 338 (1958). The legislature’s enactment of these statutory provisions reflects a strong public policy against entrusting certain individuals with handguns. Rubin, 550 N.E.2d at 329. The purpose of this policy is to safeguard the general public from the incompetent, irresponsible or criminal use of such weapons. Id. at 330. Clearly, as a member of the general public, Runnels was among the persons intended to be protected by these statutes. While Runnels will incur similar problems to establish proximate cause and remoteness of damages as with his negligence claims, we do find his Complaint sufficient with respect to his negligence per se contention to survive KS & E’s motion for judgment on the pleadings.
II. Nuisance
[17] The Indiana Statute section 32-30-6-6 defines nuisance as “[w]hatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as to essentially interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.” The essence of a nuisance claim is the foreseeable harm unreasonably created by the defendants’ conduct. City of Gary, 801 N.E.2d at 1235. In this light, our supreme court has interpreted the statute as:
A nuisance is an activity that generates injury or inconvenience to others that is both sufficiently grave and sufficiently foreseeable that it renders it unreasonable to proceed at least without compensation to those that are harmed. Whether it is unreasonable turns on whether the activity, even if lawful, can be expected to impose such costs or inconvenience on others that those costs should be borne by the generator of the activity, or the activity must be stopped or modified.
Id. at 1231 (citing W. Page Keeton, Prosser and Keeton on The Law of Torts § 88 at 629-30 (5th ed. 1984)). “There is no requirement that the activity involve an unlawful activity or use of land.” Id. at 1233. Thus, if an activity meets the requirements of an unreasonable interference with a public right, it may constitute a public nuisance. Id. Also, a public nuisance may exist without an underlying independent tort. Id. at 1234.
[18] Runnels asserts that by negligently selling firearms “in a manner that ensures a steady flow of firearms in large quantities to illegal traffickers,” and “others prohibited by law from having firearms,” KS & E created an unreasonable interference with the public’s health and use in public facilities, resulting in substantial and ongoing human and financial harm. (Appellant’s App. p. 21). These allegations state a claim and survive KS & E’s motion.
III. Piercing the Corporate Veil
[19] In general, the doctrine of “piercing the corporate veil” holds individuals liable for corporate actions based on the failure to observe corporate formalities. Fairfield Development, Inc., v. *948 Georgetown Woods Sr. Apartments Ltd. Partnership, 768 N.E.2d 463, 468 (Ind.Ct.App.2002), trans. denied. As a general rule, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 504 (Ind.Ct.App.2007). A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. Id.
[20] In deciding whether the party seeking to pierce the corporate veil has met its burden, Indiana courts consider whether the party has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. Aronson v. Price, 644 N.E.2d 864, 867 (Ind.1994). This list of factors is not necessarily exhaustive, and all factors need not be shown to support a decision to pierce the corporate veil. D.S.I. v. Natare Corp., 742 N.E.2d 15, 27 (Ind.Ct.App.2000), reh’g denied, trans. denied.
[21] Runnels’ Complaint advances that Ellis, as owner of KS & E Sports, used the store as its alter ego to promote the illegal activities and participate in the sale of the Smith & Wesson handgun in violation of state and federal laws, causing physical injury and associated harm to Runnels. Although the allegations in the Complaint in support of piercing the corporate veil are weak as “the corporate veil is pierced only where it is clear that the corporation is merely a shell for conducting the defendant’s own business and where the misuse of the corporate form constitutes a fraud or promotes injustice,” we are mindful that the determination of whether there are sufficient grounds for piercing the corporate veil is “a complex economic question” and should not be disposed of lightly. Aronson, at 867. As such, we conclude that Runnels’ Complaint with respect to piercing the corporate veil is sufficient to survive KS <& E’s motion for judgment on the pleadings.
IV. Indiana Code section 31-12-3-3(2)
[22] Despite the sufficiency of the allegations in Runnels’ Complaint, KS & E contends that the trial court should dismiss these claims because Indiana Code section 34-12-3-3 provides the company with immunity from civil liability. The statute relied upon by KS & E to support its argument provides that:
Sec. 3. Except as provided in section 6(1) or 6(2) of this chapter, a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for:
(1) Recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:
(A) Resign;
(B) manufacture;
(C) marketing; or
(D) sale; of a firearm or ammunition for a firearm; or
(2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.
*949 Focusing on subsection (2), KS & E posits an expansive interpretation of the enactment, claiming that “the plain language of the statute evidences an intent by the General Assembly to remove liability for actions over which firearm sellers have no control (i.e., the criminal acts of third parties). When read in the context of the entire statute, I.C. § 34-12-3-3(2) provides a separate layer of protection to firearm sellers in the event that a third party’s criminal or unlawful actions caused the harm at issue.” (Appellant’s Br. p. 5). Accordingly, KS & E maintains that because Martin, a third party, caused Runnels’ injuries, the retailer is immune from suit. In other words, regardless of the perceived illegal strawman sale, KS & E cannot be held liable because the injuries were inflicted by the intervening criminal acts of a third party.
[23] The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. Ind. Bureau of Motor Vehicles v. Orange, 889 N.E.2d 388, 390 (Ind.Ct.App.2008). However, if a statute is susceptible to more than one interpretation, it is ambiguous. Id. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. Id.
[24] Reviewing the plain language of the statutory enactment, it is clear that the statute provides two distinct layers of protection for firearm sellers. Section 1 bars victims of gun violence from pursuing claims against firearms sellers who are alleged to have done nothing wrong beyond lawfully selling a firearm, whereas section 2 provides that even where a firearm seller has acted unlawfully, the section limits the seller’s exposure to liability by barring plaintiffs from holding him accountable for the portion of damages that results from the criminal or unlawful misuse of a firearm by a third party.
[25] Runnels’ Complaint expressly alleges liability based on the harm that KS & E proximately caused Runnels through their own wrongful and unreasonable misuse of a firearm; the Complaint does not couch its allegations in terms of unlawful conduct by Martin. Accordingly, considering the unambiguous language in light of our limited scope of review under a T.R. 12(C) motion, we cannot conclude that under the operative facts and allegations made in the Complaint, Runnels cannot in any way succeed. See Davis, 747 N.E.2d at 1149. Therefore, we conclude that within the boundaries of this review, the Complaint is sufficient in setting forth valid claims and, at this point in time, I.C. § 34-12-3-3 does not bar further proceedings before the trial court.[4]

CONCLUSION

[26] Based on the foregoing, we hold that Runnels’ Complaint stated a claim on which relief can be granted.
[27] Affirmed.
[28] BROWN, J. concurs with separate concurring opinion.
[29] ALTICE, J. dissents with separate opinion.

. Ellis is an officer, director, shareholder, and/or owner of KS & E Sports, as well as an employee.

. We held oral argument in this cause on December 15, 2015 at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We commend and thank counsel for their excellent advocacy.

. Blackburn later pled guilty to one Count of making a false and fictitious written statement in connection with the acquisition of a firearm, in violation of federal law. He was sentenced to twelve months in prison.

. To be sure, we reiterate that based on the scope of our review, we do not decide whether I.C. § 34-12-3-3 should be characterized as an immunity statute, as proposed by KS & E. A decision on that issue is better left for another day and should be made outside the province of an initial T.R. 12(C) analysis.