

FILED

Jan 23 2017, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Abraham Murphy
Abraham Murphy Attorney at Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Roger P. Ralph
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

GHPE Holdings, LLC, d/b/a Godby Heating Plumbing Electrical,

*Appellant-Defendant,*

v.

Jason Huxley,

*Appellee-Plaintiff.*

January 23, 2017

Court of Appeals Case No. 49A02-1601-PL-164

Appeal from the Marion Superior Court

The Honorable Michael Keele, Judge

Trial Court Cause No. 49D07-1406-PL-18961

**Barnes, Judge.**

## Case Summary

[1]     GHPE Holdings, LLC, d/b/a Godby Heating Plumbing Electrical ("Godby") appeals the trial court's grant of summary judgment in favor of its former employee, Jason Huxley, in a suit brought under the Wage Payment Act

("WPA"). Godby also appeals the trial court's judgment amount against Huxley in a counterclaim brought by Godby. We affirm in part, reverse in part, and remand.

## Issues

The restated issues before us are:

I. whether the trial court properly calculated the amount of unpaid wages to which Huxley was entitled under the Wage Payment Act ("the WPA");

II. whether the trial court correctly calculated the base amount of damages to which Godby was entitled in its counterclaim against Huxley;

III. whether the trial court erred in not awarding treble damages and attorney fees to Godby in its counterclaim against Huxley; and

IV. whether Huxley is entitled to collect appellate attorney fees.

## Facts

Huxley worked for Godby between March 5, 2012, and June 14, 2013. After voluntarily leaving Godby's employment, Huxley claimed Godby owed him $1,102.97 for hours worked plus accrued vacation time. Godby failed to pay that or any amount to Huxley. The last earnings statement that Godby provided to Huxley reflected gross wages of $1,102.97, with a deduction of $986.71 for vacation time Godby claimed Huxley had used but not accrued

before leaving employment, leaving wages of $116.26. From this amount, Godby made deductions of $10.88 for state, county, Medicare, and Social Security taxes; it also reflected "voluntary" deductions for something listed as a "truck" charge in the amount of $20.00 and "UNIF" charges in the total amount of $85.38. These deductions reduced Huxley's net pay to $0.00.

[4] Several months before Huxley left Godby, he was involved in an accident while driving a company truck. The accident resulted in damage to the truck that had to be repaired.[1] The Godby employee manual provided that if an employee is determined to be at fault for an accident while on the job, he or she is responsible for paying the $1,000 deductible for Godby's insurance policy. Godby also purchased tools that Huxley used on the job and which Huxley did not return to Godby after leaving his employment. Huxley also did not return some uniforms and a phone charger to Godby.

[5] On June 5, 2014, Huxley filed an action under the WPA seeking recovery of the full $1,102.97 that he claimed Godby owed him, plus liquidated damages equaling twice that amount and attorney fees. Godby filed an answer denying that it owed any wages to Huxley. Additionally, it filed a counterclaim alleging that Huxley owed it $2,390.42 for the $1,000 insurance deductible, the tools, the uniforms, and the phone charger. Godby further claimed that Huxley's actions in retaining Godby's property and not paying the insurance deductible

---

[1] The precise date of the accident is unclear. However, an estimate from the body shop that repaired the truck indicates that the repair work was completed on February 15, 2013. *See* Ex. 2.

constituted theft, and therefore it was entitled to treble damages and attorney fees.

[6] On April 1, 2015, Huxley filed a motion for summary judgment on his WPA claim. In the motion, Huxley sought only $986.71 in wages, which he claims represented accrued but unpaid vacation time. On May 27, 2015, counsel for Godby wrote a letter to Huxley's attorney offering to consent to a judgment against it for the WPA claim in the base amount of $762.04, plus liquidated damages of twice that amount, for a total amount of $2,286.12. Godby reached the figure of $762.04 by deducting from $1,102.97 amounts for Indiana income taxes, Marion County taxes, Medicaid taxes, and Social Security taxes, plus "voluntary" deductions for "HSABC" (which apparently is insurance of some kind), "truck" charges, and a "uniform" charge. App. pp. 31, 33. The deductions for state and county taxes and Medicaid and Social Security totaled $114.61, with the remaining deductions totaling $226.32, for a grand total of $340.93.

[7] Huxley refused Godby's offer. On December 14, 2015, the trial court held a combined hearing on Huxley's motion for summary judgment and a bench trial on Godby's counterclaim. Thereafter, the trial court granted summary judgment in Huxley's favor on his WPA claim, awarding him the requested base amount of $986.71, plus liquidated damages of two times that amount—$1,973.42—and attorney fees of $6,775.00. On the counterclaim, the trial court awarded Godby a total of $1,557.73 for Huxley's retention of the tools, uniforms, and phone charger. It did not award Godby the $1,000.00 insurance

deductible.  It also did not award Godby treble damages or attorney fees.
Godby now appeals.  Additional facts will be provided as needed.

# Analysis

## *I. WPA Claim*

The first issue before us is whether the trial court properly calculated the amount of unpaid wages to which Huxley was entitled.  The trial court granted summary judgment in favor of Huxley on this issue.  When reviewing a grant of summary judgment, we must draw all reasonable inferences in favor of the non-moving party and will affirm only "'if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (quoting Ind. Trial Rule 56(C)).  We must assure that the losing party was not improperly prevented from having its day in court.  *Id.*  "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim."  *Id.*  Cases hinging on disputed material facts are by definition inappropriate for summary judgment and must be resolved at trial.  *Id.* at 1188.

Godby does not now dispute that it improperly withheld the supposedly-unearned vacation pay from Huxley's last paycheck and that his gross pay should have equaled $1,102.97.  Additionally, Godby does not challenge awarding Huxley an additional amount equaling two times the amount of pay

he was owed. However, it does contend that under the WPA, Huxley was owed only $762.04 in net wages, after taking deductions for taxes and for other "voluntary" deductions.

[10] Under the WPA, employers generally must pay each employee at least semimonthly or biweekly, and not more than ten days after the wages have been earned. Ind. Code § 22-2-5-1. "However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer." *Id.* If an employer does not make a timely wage payment, the WPA authorizes the employee to file suit seeking recovery of the wages, plus an award of attorney fees and costs and liquidated damages of up to two times the amount of the unpaid wages. I.C. § 22-2-5-2.[2]

[11] Because the WPA is a penal statute that is in derogation of the common law, it must be strictly construed. *E & L Rental Equip., Inc. v. Bresland*, 782 N.E.2d 1068, 1070 (Ind. Ct. App. 2003). The WPA governs both the frequency and the amount an employer must pay its employee. *Skillman v. Ivy Tech Cmty. Coll.*, 52 N.E.3d 11, 13 (Ind. Ct. App. 2016), *trans. denied*. In other words, an employer cannot avoid the penalty provisions of the WPA by paying its employee an

---

[2] The WPA applies to persons, such as Huxley, who keep or quit their jobs, while the Wage Claims Act applies to those who are fired, laid off, or on strike. *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1149 (Ind. 2013).

amount less than that agreed to by the parties. *See St. Vincent Hosp. & Health Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002).

[12] No Indiana case or statute addresses whether "wages" due under the WPA post-termination is the gross wages due to the employee or the net wages after tax deductions. Godby states in its brief that it "firmly believes that it was clearly under a legal duty to withhold certain sums from Huxley's last paycheck for tax purposes." Appellant's Br. p. 10. We agree with this proposition. The withholding of federal income taxes from an employee's wages by the employer, in accordance with regulations promulgated by the Secretary of the Treasury, is mandated by 26 U.S.C. § 3402(1). The Internal Revenue Service and federal courts have determined that awards of improperly-withheld back pay following termination of employment are subject to mandatory tax withholding. *See Gerbec v. United States*, 164 F.3d 1015, 1026 (6th Cir. 1999) (holding wages of employees who successfully recovered back pay following wrongful termination were subject to FICA withholding); Rev. Rul. 72-572, 1972-2 C.B. 535 (1972) ("A payment made by a company in settlement of a discrimination claim brought against it by an employee whose services were terminated by the company is 'wages' for purposes of the FICA, FUTA, and income tax withholding."). Similarly, in Indiana, "[i]ncome tax is assessed on the wages of employees, but it is the employer who must 'deduct, retain, and pay' the tax to the government." *Indiana Dep't of State Revenue v. Safayan*, 654 N.E.2d 270, 272 (Ind. 1995) (citing I.C. § 6-3-4-8(a)). In light of this clear federal and state authority mandating employer withholding of tax obligations

from an employee's "wages," we hold that an employer complies with the WPA if it deducts mandatory tax withholding obligations from an employee's wages, whether such withholding occurs during or after the employee's term of employment.

[13] In the present case, Godby sought to withhold a total of $340.93 from Huxley's final paycheck. Of that amount, $114.61 was for payment of Indiana state and county taxes, Medicare taxes, and Social Security taxes; $226.32 of that amount was for so-called "voluntary" deductions for "HSABC" (which apparently is insurance), "truck" charges, and a "uniform" charge. App. pp. 31, 33. Godby has not made any argument or directed us to any designated evidence in support of properly withholding this $226.32 for purposes of the WPA.[3] This is a crucial omission, because there is very detailed and specific statutory language regarding how and when an employer may make "voluntary" deductions from an employee's wages. We have summarized those provisions as follows:

> [Indiana Code Section] 22-2-6-1(a) states that "[a]ny direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given, shall constitute an assignment of the wages of said employee." [Indiana Code Section] 22-2-6-2 provides that to be valid, an assignment of wages must be in writing, signed by the employee, revocable at any time by the employee upon written notice to the employer, and agreed to in writing by the employer. An executed copy of the assignment must be delivered to the

---

[3] There is a "Payroll Deduction Authorization" form in the record, but it does not specify that it applies to the charges listed on Huxley's earnings statement, except for possibly uniform charges. Ex. 9.

employer within ten days after its execution. Finally, the assignment must be made for one of the purposes described in [Indiana Code Section] 22-2-6-2(b), which includes items like paying insurance premiums or union dues, and purchasing shares of the employer's stock . . . .

*E & L Rental Equip.*, 782 N.E.2d at 1071. Without any argument or citation to authority or the record as to how or whether the $226.32 in "voluntary" deductions from Huxley's wages were taken in accordance with these statutes, we conclude Godby has waived any claim to have properly deducted that amount. *See Morris v. BioSafe Engineering, Inc.*, 9 N.E.3d 195, 199 n.2 (Ind. Ct. App. 2014) (citing Ind. Appellate Rule 46(A)(8)(a)) (holding argument was waived for failing to support arguments with cogent reasoning or citation to authority), *trans. denied*.

[14] Thus, we conclude that Godby was entitled to withhold mandatory tax deductions from Huxley's final paycheck, but it has not established that it was entitled to withhold the so-called "voluntary" deductions. Here, however, Huxley only sought, and the trial court only awarded him, a base amount of $986.71 in wages. This reflected the full amount of his vacation pay, not the full amount of his wages, but without any deductions for taxes from that amount. This court lacks the necessary information to calculate what amount of taxes should have been deducted from that amount. Also, by only seeking $986.71, Huxley did essentially concede that Godby properly took deductions from his $1,102.97 gross pay of $10.88 for state, county, Medicare, and Social Security taxes, and "voluntary" deductions for something listed as a "truck"

charge in the amount of $20.00 and "UNIF" charges in the total amount of $85.38. These tax and "voluntary" deductions do not square with the deductions Godby believes it is now entitled to make.[4]

[15] We reverse the granting of summary judgment to Huxley to the extent the trial court awarded him the full $986.71 without accounting for mandatory tax deductions. We remand for a calculation of that amount, taking into consideration that $10.88 for taxes already has been deducted from Huxley's wages. However, Godby has failed to establish that it was entitled to make any additional "voluntary" deductions from Huxley's wages. Huxley also is entitled to double the net wages owed to him as liquidated damages.

[16] Furthermore, Godby notes that it offered to settle Huxley's claim for a base amount of $762.04, or $1,102.97 minus tax deductions of $114.61 and "voluntary" deductions of $226.32. Godby asserts that pursuant to Indiana Trial Rule 68, it offered Huxley the full amount to which he was entitled and, therefore, he should not be entitled to recover any attorney fees incurred after the offer was made, which was on May 27, 2015.[5] However, although we do

---

[4] It appears possible that the amount for taxes to be deducted from the $986.71 would be $103.73, for a net amount of $882.98. This would be the $114.61 Godby sought to deduct from the full wages amount of $1,102.97, less the $10.88 in taxes to which Huxley essentially has already conceded by only seeking $986.71. If Godby is agreeable to this being the correct amount of the deductions for taxes only, the trial court may enter judgment in the amount of $882.98 in Huxley's favor on remand, plus double that net amount, without the necessity of further litigation over the matter of a few dollars.

[5] Indiana Trial Rule 68 provides in part that if an offer of judgment is made and rejected, and "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Here, Godby is not seeking recovery of costs from Huxley with respect to the WPA action, but instead seeks to limit the attorney fees Huxley could recover under the WPA.

not yet know the precise amount to which Huxley is entitled to recover on remand, that amount necessarily will be no less than $872.10, or $986.71 minus taxes of $114.61, and most likely will be more than that amount because less taxes likely will be withheld. Thus, Godby has failed to establish that its offer of $762.04 was sufficient to satisfy Huxley's demand and to meet the requirements of Trial Rule 68.

## II. Counterclaim—Damages

[17]     Next, Godby contends the trial court erred in only awarding it $1,557.73 on its counterclaim for Huxley's retention of the tools, uniforms, and phone charger, and by not awarding it the $1,000.00 insurance deductible. Unlike the WPA claim, the trial court issued a general judgment on the counterclaim after a bench trial. When reviewing a general judgment issued following a bench trial, we will affirm if there is substantial evidence of probative value supporting the judgment on any legal theory. *Hodges v. Swafford*, 863 N.E.2d 881, 885 (Ind. Ct. App. 2007). "We neither reweigh evidence nor judge the credibility of witnesses, and we consider only the evidence most favorable to the prevailing party along with all reasonable inferences to be drawn therefrom." *Id.* Additionally, Godby bore the burden of proof on its counterclaim and is therefore appealing a negative judgment with respect to the insurance deductible. *See Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4

It is unclear that this fits within the language of Trial Rule 68; we need not address that issue as we find Trial Rule 68 does not apply here in any case.

(Ind. Ct. App. 2012). "A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court." *Id.*

[18] The "Payroll Deduction Authorization" form in the record states in part, "I understand that I am responsible for insurance deductibles charged to us as a result of any accident that is deemed to be my fault." Ex. 9. At trial, Godby's vice-president, Kevin Greisl, testified about the accident Huxley was involved in, the resulting repair bill of over $2000, and the $1000 insurance deductible on Godby's insurance policy. Greisl testified that after Huxley quit, he decided to seek recovery of the deductible from Huxley when Godby was asked to pay for the other vehicle damaged in the accident, which Greisl stated meant that Huxley was at fault for the accident. Godby did not submit any documentation from an insurance company regarding supposed fault for the accident. Greisl also stated that Huxley had said that the accident occurred when another vehicle swerved in front of him and caused him to rear end the other vehicle. By contrast, Huxley testified that he passed a urine screen immediately after the accident and was not at fault for it. He also indicated that he was completely unaware that Godby wanted to collect the $1000 deductible from him until Godby filed its counterclaim.

[19] There is conflicting evidence in the record as to whether Huxley was at "fault" for the accident as required to hold him responsible for the $1000 deductible. There is a lack of conclusive proof that Godby's payment of damages to the other vehicle necessarily meant Huxley was at fault for the accident within the

meaning of the agreement between Godby and Huxley. There is also evidence that Huxley did not believe himself to be at fault for the accident and that Godby made no attempt to collect the deductible from him while he was still employed and until this litigation arose. Under these facts, we cannot say the evidence points unerringly to the conclusion that Godby is entitled to collect the deductible from Huxley. The trial court did not err in excluding that amount from the damages it awarded Godby on its counterclaim.

### III. Counterclaim—Treble Damages and Attorney Fees

[20] The next issue before us is whether the trial court erred in declining to order Huxley to pay treble damages and attorney fees to Godby on its counterclaim. Again, as a losing plaintiff with respect this argument, Godby is appealing from a negative judgment and that standard of review applies. Indiana Code Section 34-24-3-1 permits a plaintiff who proves by a preponderance of the evidence that the defendant committed criminal conversion, causing pecuniary loss to the plaintiff, to recover the costs of a civil action, reasonable attorney's fees, and up to three times actual damages. *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166 (Ind. Ct. App. 2008). "Criminal conversion requires proof that a person knowingly or intentionally exerted unauthorized control over property of another person." *Id.* (citing I.C. § 35-43-4-3). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). A person's control over

property of another person is "unauthorized" if it is exerted without consent or in a manner or to an extent other than that to which the other person has consented. I.C. § 35–43–4–1(b)(1), (2).

[21] "Unlike in a criminal trial, a claimant in a civil action need only prove by a preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action." *French-Tex Cleaners*, 893 N.E.2d at 1166. Nevertheless, the claimant must prove all the elements of the alleged criminal act, including the required criminal intent for conversion. *Id.* at 1166-67. "It is this mens rea requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover." *Id.* at 1167. "[A] party may not restyle a breach-of-contract claim as a tort claim simply to obtain additional damages." *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012), *trans. denied*.

[22] Huxley testified at trial regarding his retention of the tools that Godby had paid for. Huxley explained that, when he began working at Godby, he brought his own personal tools to the job. Huxley stored the tools in his company-provided truck, which he parked in his driveway. Huxley did not believe the locks on the truck were adequate and told Godby so. Sometime in December 2012, Huxley's truck was broken into, and his tools were stolen. Huxley spent over $5,000 out of his own pocket replacing those tools; he also reiterated his request to Godby that the locks on the trucks be improved, but they were not. Within a

matter of two weeks after the first theft, Huxley's truck again was broken into, and his new tools were stolen. This time, Huxley requested that Godby purchase a number of replacement tools. Godby did so; Huxley thought, erroneously as it turned out, that he would not be required to repay Godby for those tools. However, Godby did seek repayment for the tools after Huxley terminated his employment. With respect to Huxley's uniforms, he did return them to Godby after litigation began at a court date. Godby still sought damages because the uniform company would not take them back because of the time period that had passed, so Godby had to pay for them. There is virtually no evidence in the record regarding the phone charger Huxley retained.

[23] It is evident to us in considering Huxley's testimony, as we must do given our standard of review, that there was a bona fide contract-related dispute regarding who was responsible for the cost of the tools purchased after the second theft from Huxley's company truck in December 2012. The evidence hardly required the trial court to find that Huxley had the necessary criminal mens rea to commit criminal conversion by intentionally or knowingly retaining the tools without Godby's consent. Similarly, we cannot say that Huxley's delayed returning of Godby's uniforms is sufficient evidence that he converted them, and there is a complete lack of evidence regarding his retention of the phone charger. It does appear that Godby has improperly attempted to turn contract-related disputes with a former employee into a criminal matter, which is not the

purpose of the conversion statutes. The trial court properly rejected Godby's request for treble damages and attorney fees on its counterclaim.

## IV. Appellate Attorney Fees

[24] Finally, we address Huxley's request for appellate attorney fees. His request partially falls under Indiana Code Section 22-2-5-2, which provides for an award of reasonable attorney fees to an employee in any successful WPA action. This provision includes appellate attorney fees as well. *Steele*, 766 N.E.2d at 705-06. Although we have partially reversed the WPA claim and Huxley will receive a slightly-lesser amount on remand, it is consistent with the purposes of the WPA to permit him to recover appellate attorney fees with respect to this claim on appeal. *See id.* at 706 (Boehm, J., concurring) (noting that "vast majority of workers . . . are dependent on their paychecks for their day-to-day expenses" and "[t]hese employees need the money currently, not at the end of protracted litigation, and often do not have the economic staying power to engage in a court battle over relatively small amounts. A statute providing one party with treble damages and attorney's fees is a very substantial deterrent to an employer's playing fast and loose with wage obligations."). Additionally, in its reply brief, Godby makes no mention of Huxley's appellate attorney fees request under the WPA attorney fees statute.

[25] Huxley also seeks appellate attorney fees under Indiana Appellate Rule 66(E), which would apply to that part of the appeal related to Godby's counterclaim. Appellate Rule 66(E) permits us to award appellate attorney fees to a successful litigant "if an appeal, petition, or motion, or response, is frivolous or in bad

faith." In order to award attorney fees under this rule, an appeal must be "'permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.'" *Ballaban v. Bloomington Jewish Cmty., Inc.*, 982 N.E.2d 329, 339-40 (Ind. Ct. App. 2013) (quoting *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003)). "A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious." *Id.* at 340.

Although Godby was unsuccessful on its counterclaim arguments on appeal, we cannot say those arguments were so entirely lacking in merit or cogency that they indicate bad faith or frivolity. Huxley is not entitled to appellate attorney fees with respect to the counterclaim issues. We remand for the trial court to make a fair calculation of the appellate attorney fees to which Huxley is entitled with respect solely to the WPA claim.

## Conclusion

We reverse the trial court's award of $972.71 in base wages to Huxley, as well as the doubling of that amount as liquidated damages. We remand for calculation of the wages to which Huxley is entitled after consideration of mandatory tax withholding only; Huxley is entitled to that net amount plus double the net amount. We affirm the trial court's damages award on Godby's counterclaim and its refusal to award treble damages or attorney fees to Godby. We also remand for a calculation of the reasonable appellate attorney fees to which Huxley is entitled with respect to defending the WPA judgment only.

Affirmed in part, reversed in part, and remanded.

Riley, J., and Bailey, J., concur.