FILED

Nov 01 2017, 6:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Ronald E. Weldy
Barker Hancock & Cohron
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Michael A. Blickman
Paul C. Sweeney
Derek R. Molter
Justin P. Spack
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raymond Brown, on behalf of
Himself and All Others Similarly
Situated,

*Appellants-Plaintiffs,*

v.

Bucher and Christian
Consulting, Inc., d/b/a
BC*forward*,

*Appellee-Defendant*

November 1, 2017

Court of Appeals Case No.
49A04-1611-PL-2564

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

Trial Court Cause No.
49D07-1604-PL-12518

**Baker, Judge.**

[1] Raymond Brown appeals the trial court's order granting the motion for partial judgment on the pleadings filed by Bucher and Christian Consulting, Inc., d/b/a BC*forward* (BC*forward*), on Brown's claims under the Wage Payment Statute.[1] Brown argues that the trial court erred by finding as a matter of law that he is not entitled to seek damages for salary-based wages or commission-based payments under the Wage Payment Statute. Finding no error, we affirm.

## Facts

[2] On December 9, 2013, BC*forward* hired Brown as a consultant pursuant to an employment agreement. During Brown's tenure with BC*forward*, the company paid him an annual salary of approximately $36,000. Brown was entitled to additional compensation as follows: he was eligible to receive "Incentive Compensation"[2] or sales commission,[3] each of which was calculated and paid monthly, and each of which were paid forty-five days after the calendar month in which they were earned. For the first six months of his employment, he was guaranteed a minimum monthly Incentive Compensation payment of $500.

[3] On March 1, 2016, Brown quit his employment with BC*forward*. On March 28, 2016, Brown filed a class action complaint against BC*forward* under the Wage

---

[1] Ind. Code § 22-2-5-1 et seq.

[2] Incentive Compensation was calculated based upon the monthly gross profit made by the resources managed by Brown. Appellant's App. Vol. II p. 94-95.

[3] The percentage of sales commission to which Brown was entitled also depended on the amount of monthly gross profit made by the resources managed by Brown. Appellant's App. Vol. II p. 87.

Payment Statute, arguing that BC*forward* failed to pay its employees their salary-based wages within the timeframe mandated by Indiana's Ten-Day Rule.[4] Individually, Brown also filed claims that BC*forward* failed to pay him all commissions earned following his voluntary termination of employment and thereby (1) violated the Wage Payment Statute and (2) breached its contract with him. On May 24, 2016, BC*forward* filed a motion for partial judgment on the pleadings, arguing in relevant part as follows:

- No actionable Wage Payment Statute claims exist because all wages have been paid to Brown; and
- The Incentive Compensation and commission payments do not qualify as wages under the Wage Payment Statute.

On August 22, 2016, the trial court granted BC*forward*'s motion. In relevant part, it found and held as follows:

1.  It is undisputed that Brown received all of his salary from [BC*forward*]. Therefore, Plaintiff holds no basis for Count I of his lawsuit because (a) there exist no unpaid wages; (b) attorney's fees and liquidated damages are only recoverable under the current version of the Wage Payment Statute in a claim for unpaid wages; and, (c) retroactive [a]pplication of the Wage Payment Statute, as revised, stands warranted.

2.  As a matter of law, the commissions paid to Brown . . . fail to qualify as wages under the Wage Payment Statute because (a) they are contingent on factors outside the

---

[4] I.C. § 22-2-5-1.

employee's control; (b) commissions hold no relation to the time worked by the employee; (c) the commissions were not paid on a regular periodic basis for regular work done by the employee; and, (d) employees received the commissions in addition to the wages. Since the commissions fail to qualify as wages under the Wage Payment Statute, Brown fails to state a claim in Count II of the Complaint.

Appellant's App. Vol. II p. 10-11. The trial court dismissed Brown's class action claims under the Wage Payment Statute; his individual claim for breach of contract is still pending before the trial court. Brown now appeals.

## Discussion and Decision

[4] Brown argues that the trial court erroneously ruled as follows: (1) under the Wage Payment Statute, an employee is only entitled to damages and attorney fees for unpaid wages, and Brown's wages are not unpaid; and (2) Brown's commission payments do not qualify as wages under the Wage Payment Statute.

## I. Standard of Review

[5] A motion for judgment on the pleadings under Indiana Trial Rule 12(C) tests the sufficiency of a claim or defense presented in the pleadings and should be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014). We base our ruling solely on the pleadings and accept as true the material facts alleged in the complaint. *KS&E*

*Sports v. Runnels*, 72 N.E.3d 893, 898 (Ind. 2017). We apply a de novo standard of review to a trial court's ruling on a motion for judgment on the pleadings. *Id.*

[6] We also apply a de novo standard of review to issues of statutory interpretation. *Id.* If a statute is clear and unambiguous, we put aside canons of statutory construction and require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* at 898-99.

## II.  Wage Payment Statute

[7] The general rules set forth by Section 1 of the Wage Payment Statute are as follows:  (1) every employer shall pay each employee at least semimonthly or biweekly; and (2) payment shall be made for all wages earned to a date not more than ten business days prior to the date of payment (the "Ten-Day Rule"). Ind. Code § 22-2-5-1. Section 2 sets forth the penalties for employers who violate Section 1.

## A.  Count I:  Class Action Claim For Untimely Paid Wages

[8] Brown concedes that BC*forward* paid him all salary-based wages he was owed before the lawsuit was even filed. Nevertheless, he sued BC*forward*, alleging that there were some occasions during his employment when the calendar was such that BC*forward*'s bimonthly pay schedule resulted in the payment of Brown's wages slightly outside Section 1's Ten-Day Rule.

# 1. Retroactive Application of Section 2

[9] In this case, while Brown alleges that BC*forward* did not comply with the Section 1 Ten-Day Rule during his employment there, it is undisputed that he has received all salary-based wages he is owed. The trial court found that because he has been paid all salary-based wages, he is not entitled to seek damages pursuant to Section 2.

[10] As we consider under what circumstances a claimant under the Wage Payment Statute is entitled to damages and attorney fees, we must first determine which version of the statute applies in this case. The version of Section 2 of the Wage Payment Statute in place during the first one and one-half years of Brown's employment with BC*forward* stated as follows:

> Every [employer] who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

I.C. § 22-2-5-2 (2014). This Court interpreted the prior version as allowing employees to recover attorney fees and liquidated damages for late-paid wages, even if the employees had received all the wages to which they were entitled

before filing suit.  *E.g.*, *Valadez v. R.T. Enters., Inc.*, 647 N.E.2d 331, 333 (Ind. Ct. App. 1995).

[11]    In 2015, however, the General Assembly amended this section, which now provides as follows:

> Every [employer] who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee *for the amount of unpaid wages*, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee.  The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs.  In addition, if the court in any such suit determines that the [employer] that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

I.C. § 22-2-5-2 (current version) (emphasis added).

[12]    Our Supreme Court has explained the rules regarding retroactive application of statutes as follows:

> The general rule is that unless there are strong and compelling reasons, statutes will not be applied retroactively.  An exception to this general rule exists for remedial statutes, *i.e.* statutes intended to cure a defect or mischief that existed in a prior statute.  Ultimately, however, whether or not a statute applies retroactively depends on the Legislature's intent.  That is, when a remedial statute is involved, a court must construe it to "effect the evident purpose for which it was enacted[.]"  Accordingly, remedial statutes will be applied retroactively to carry out their

legislative purpose unless to do so violates a vested right or constitutional guaranty.

*Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 260 (Ind. 2003) (internal citations omitted). We must determine, therefore, whether the 2015 amendment of Section 2 constitutes a remedial statute that should be applied retroactively.

[13] The primary changes made to Section 2 as a result of the 2015 amendment can be summarized as follows:

- Employers are liable to employees for violations of Section 1 for unpaid wages due, attorney fees, and court costs.
- Liquidated damages are additionally available only if, in violating Section 1, the employer was not acting in good faith. Under such circumstances, the employee is entitled to liquidated damages totaling two times the amount of wages due.

It is apparent that in effecting these statutory changes, the legislature intended to cure the defect or mischief that existed in the prior statute that permitted exorbitant recovery in cases in which there were no actual unpaid wages and where the employer acted in good faith. For example, if an employer mistakenly delays payment of an employee's salary by a minimal amount of time and corrects that error as soon as the employee brings the error to the employer's attention, the employer no longer faces the possibility of a substantial liquidated damages penalty.

[14] We also note that the Wage Payment Statute is a penal statute because it imposes a penalty beyond the actual amount of unpaid wages owed. *GHPE*

*Holdings, LLC v. Huxley*, 69 N.E.3d 513, 518 (Ind. Ct. App. 2017). There is a presumption that an amendment removing or diminishing a penalty, such as the 2015 amendment of the Wage Payment Statute, will apply even to conduct that predates the amendment. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270-71 (1994) (observing that "at common law a contrary rule applied to statutes that merely *removed* a burden on private rights by repealing a penal provision (whether criminal or civil); such repeals were understood to preclude punishment for acts antedating the repeal") (emphasis original). Given the remedial nature of the 2015 amendment and the penal nature of the Wage Payment Statute, we can only conclude that the 2015 amendment may be applied retroactively.

Brown argues that applying the current version of the statute retroactively is prohibited because it violates a vested right or constitutional guarantee. We disagree. The liquidated damages provision, as well as the attendant court costs and attorney fees, is punitive in nature, and there is no vested right to prejudgment punitive damages. *Cheatham v. Pohle*, 789 N.E.2d 467, 471-72 (Ind. 2003). Consequently, there is no bar to the retroactive application of the Wage Payment Statute, and the trial court did not err in this regard.

## 2. "Unpaid Wages"

Having concluded that the trial court did not err by retroactively applying the current version of the Wage Payment Statute, we must next determine whether,

as the trial court concluded, Brown is precluded from recovery because his wages are not unpaid.

[17] As noted above, Section 2 of the Wage Payment Statute states that an employer who violates Section 1 (by making insufficient or untimely salary payments to its employees)

> shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee. The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs. In addition, if the court in any such suit determines that the [employer] . . . was not acting in good faith, the court shall order . . . liquidated damages . . . .

I.C. § 22-2-5-2. In other words, the employee is entitled to file a lawsuit to recover the amount due to him as well as his costs and fees incurred in the litigation. Under certain circumstances, he may also be entitled to liquidated damages.

[18] In this case, Brown has conceded that there are no wages due to him by BC*forward*. Instead, he alleges that BC*forward* at times paid his salary on a timeframe exceeding the Ten-Day Rule. The plain, ordinary, and usual definition of "unpaid" is "not paid." *Merriam-Webster Dictionary*, at https://www.merriam-webster.com/dictionary/unpaid. While it may be the case that BC*forward* occasionally paid Brown's wages on a schedule that exceeded the Ten-Day Rule, it is undisputed that the company did, in fact, ultimately pay his wages. We cannot conclude that this scenario equates to the

"unpaid wages" referred to in Section 2; nor can we conclude that Brown is entitled to maintain a lawsuit "to recover the amount due to" him, as there is no amount that is, in fact, due. I.C. § 22-2-5-2; *see also City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 587 (Ind. 2017) (explaining that the purpose of the Wage Payment Statute "is to prevent employers from stealing their employees' wages and profiting from their labor"). As liquidated damages are "[i]n addition" to the employee's recovery of unpaid wages, attorney fees, and court costs, the plain statutory language signifies that if one is not entitled to the latter, one may not seek the former. As a result, we find no error in the trial court's conclusion that because Brown has no unpaid wages, as a matter of law his claim for costs, fees, and liquidated damages under the Wage Payment Statute must fail.[5]

## B. Count II: Individual Claim for Unpaid Commissions

[19]   In addition to his class action claim for unpaid wages, Brown filed an individual claim alleging that BC*forward* violated the Wage Payment Statute by failing to pay him all commissions earned after he left his employment. Clearly, unlike Count I, this count includes a claim that the commissions were "unpaid," but we must determine whether the commission payments constituted "wages."

---

[5] Because we affirm the trial court on this basis, we need not consider Brown's argument regarding the trial court's observation that other purported class members whose employment was involuntarily terminated are not entitled to file claims under the Wage Payment Statute.

[20]   In *Bragg v. Kittle's Home Furnishings, Inc.*, this Court considered whether commissions are "wages" pursuant to the Wage Payment Statute. 52 N.E.3d 908 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*. After a lengthy and thorough discussion of relevant precedent, this Court examined the following factors in determining whether the commissions at issue qualified as wages: (1) whether the commission is easily calculated and paid within ten days after it was earned; (2) whether the commission is linked to a contingency outside the employee's control; (3) whether the commission is linked to the amount of time the employee worked; (4) whether the commission was paid on a regular basis and whether the amount of commission payments could vary widely from month-to-month; and (5) whether the commission was paid in addition to the employee's salary. *Id.* at 921, 925-27 (citing to *Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 664 (7th Cir. 2011), for factors).

[21]   Here, Brown's compensation began with a guaranteed annual salary of approximately $36,000. From December 9, 2013, through February 28, 2015, he was eligible to receive monthly Incentive Compensation payments on top of his salary. Those payments were "based on the Gross Profit generated by the Resources [that Brown was] responsible for generating in each calendar month." Appellant's App. Vol. II p. 94. The following factors played a role in calculating Incentive Compensation:

- "Gross Profit" was defined as "the difference between the amount billed to the client for the work completed by the resource minus the fully-burdened cost of the resource to [the Company]. This shall include, but not [be] limited to, allocations for benefits, taxes, and

overhead. The calculation of the fully-burdened cost and Gross Profit shall be made at the sole reasonable discretion of [the Company]." *Id.*

- The percentage of Gross Profit paid to Brown as Incentive Compensation "shall vary based on the classification of the type of resource placement being made. This classification will be made in the sole and reasonable discretion of [the Company]." *Id.*

- That percentage also varied "based on the volume of the Gross Profit generated by [the employee] in a given month, and calculated separately between Competition and Non-Competition classifications. As the Gross Profit increases to each stratum shown [in the agreement], the incentive percentage earned will increase, as applied to Gross Profit dollars exceeding that threshold and through the next threshold only." *Id.*

When Brown became an account manager on March 1, 2014, he also became eligible to potentially receive monthly sales commission payments on top of his salary, as well as Incentive Compensation if he exceeded sales performance expectations. *Id.* at 82. His commission payments were tied to his own performance, the company's performance, and the performance of independent consultants. Brown was not guaranteed Incentive Compensation or commission payments on any set schedule, and could go months without earning any such payments if his projects did not produce a sufficient gross profit.[6]

[22] Turning to the *Bragg* factors, we must first consider whether these payments were easily calculated and paid within ten days of when they were earned. The

---

[6] The one exception to this setup was during his first six months in a job role, when he was guaranteed payments of at least $500 per month. We will address these guaranteed payments below.

payments were based, in part, on gross profit, which was calculated on a monthly basis. Therefore, the payments were not necessarily paid or calculated within ten days of when they were earned.

[23] Second, we must consider whether the payments were linked to any contingencies outside Brown's control. We find that they were. Specifically, the Incentive Compensation was linked to expenses borne by BC*forward*, including taxes and overhead, as well as the classification of the type of resource placement being made, which was solely determined by BC*forward*. And commission payments were linked to, among other things, the performance of the company, independent consultants, and age of accounts receivable.

[24] Third, we must consider whether the payments were linked to the amount of time Brown worked. We find that they were not. Simply working for a week, or a month, was not enough to earn Incentive Compensation or commission payments. Instead, he was required to complete sales and turn a gross profit for the company.

[25] Fourth, we must consider whether the payments were made on a regular basis and whether the amount of those payments could vary. While BC*forward* set up a monthly schedule for the payment of Incentive Compensation and commissions, Brown was not guaranteed any payments at all. Indeed, he could theoretically have gone months without earning any such payments if his projects did not produce a sufficient gross profit. And as a result, the amount of

his Incentive Compensation and commission payments could have varied widely. Finally, it is undisputed that both Incentive Compensation and commission payments were in addition to Brown's annual salary.

[26] Brown argues that because he was guaranteed a monthly Incentive Compensation payment of $500 for the first six months of a job role, all he had to do to earn these payments was show up to work for those six months; consequently, he insists that these guaranteed payments constituted wages. Brown waived this argument because he failed to raise it to the trial court. He argues that the issue was not presented because "BC*forward* failed to inform the Trial Court that any of the commissions at issue were guaranteed." Reply Br. p. 18. But his own employment contract contains the provisions regarding these guaranteed payments, meaning that he had this information in his possession from the start. *E.g.*, Appellant's App. Vol. II p. 95 (employment agreement including "Incentive Guarantee Period" and bearing Brown's signature). It was his responsibility, not BC*forward*'s, to raise this argument. He failed to do so, and has waived it.

[27] All of the *Bragg* factors weigh in favor of concluding that these payments were not wages pursuant to the Wage Payment Statute. Brown argues that *Bragg* was wrongly decided, but we decline his invitation to revisit its analysis and holding. We find that the trial court did not err by finding that the Incentive Compensation and commission payments made by BC*forward* to Brown were not wages pursuant to the Wage Payment Statute. In sum, the trial court did not err by granting BC*forward*'s motion for partial judgment on the pleadings.

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.