Teresa PERRY, Appellant–Plaintiff,

v.

WHITLEY COUNTY 4–H CLUBS INC., Appellee–Defendant.

No. 91A03–1002–CT–101.

Court of Appeals of Indiana.

Aug. 16, 2010.

Sarah E. Reser, Glaser & Ebbs, Fort Wayne, IN, Attorney for Appellant.

Carrie Koontz Gaines, Kopka, Pinkus Dolin & Eads, L.L.C., Mishawaka, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Teresa Perry appeals the trial court's entry of summary judgment in favor of Whitley County 4–H Clubs, Inc. (the "4–H Club") on Perry's negligence complaint for personal injuries suffered during a horse competition sponsored by the 4–H Club. For our review, Perry raises two issues, which we consolidate and restate as whether the trial court properly granted summary judgment based on the Indiana Equine Activity Statute. Concluding there is no genuine issue of material fact and the Equine Activity Statute bars Perry's claim for injuries resulting from inherent risks of equine activities, we affirm.

### Facts and Procedural History

The undisputed facts and those most favorable to Perry as the non-movant are as follows. At all relevant times, Perry, an adult, was a member of the 4–H Club's Equine Advisory Board, which provides guidance and instruction to children participating in the 4–H Club's horse events, and was herself a regular participant in those

events. Perry was also the owner of seven horses. In July 2007, the 4–H Club held horse practices and competitions at the Whitley County Fairgrounds as part of the Whitley County Fair. These events were generally held in the 4–H Club's Horse Barn, but one event, the Large Animal Round Robin Competition, was held in the 4–H Club's Show Barn, located next to the Horse Barn. The Horse Barn is over 100 feet wide but the Show Barn is approximately thirty-six feet wide along its shorter side. Horses were generally familiar with the Horse Barn but unfamiliar with the Show Barn, where they were "not allowed any other time" besides the Round Robin Competition. Appellant's Appendix at 88. At all entrances to the Horse Barn, the 4–H Club had posted "Equine Activity warning signs" that were "clearly visible." *Id.* at 18–19 (affidavit of Bill Leeuw, 4–H Club's President of the Board).

On July 25, 2007, the Round Robin Competition was held. The Equine Advisory Board and volunteers selected the horses to be shown, and Perry herself selected one of those horses "at the last minute." *Id.* at 93. Perry was present at the Round Robin Competition as an Equine Advisory Board member responsible for the safety of children handling the horses. As part of the event, seven horses were led from the Horse Barn into the Show Barn and lined up approximately two and one-half feet apart along the shorter side of the Show Barn. The horses were then turned over to children who did not normally handle horses but had experience handling animals such as pigs and cows and had received brief instruction on how to handle a horse. After one of the children finished leading a horse through a series of maneuvers, the child left the horse facing away from the center of the Show Barn, in the opposite direction from the neighboring horses and with its rear next to the head of a neighboring horse. The horse facing backwards began sniffing the rear of the neighboring horse, which pinned its ears against its head as a sign it was agitated. Perry realized this situation posed a danger to the child handling the horse facing backwards. Perry therefore approached the child and told the child to turn the horse around. As the child was doing so, the neighboring horse kicked Perry in the knee. Perry was thrown back and suffered personal injuries.

In September 2008, Perry filed a complaint against the 4–H Club alleging her injuries were caused by the 4–H Club's negligence in "allowing horse activities to be conducted on premises unsuitable for such activities." *Id.* at 6. As specifically argued by Perry at the summary judgment hearing, she alleged the 4–H Club was negligent in deciding to hold the Round Robin Competition in the Show Barn instead of the Horse Barn, as the smaller Show Barn "requires horses to be placed close together, increasing the chances that a child near the horse will be injured by one. It's also an environment the horses aren't familiar with, which makes it more likely that a horse will get spooked and kick someone." Transcript at 4. Among the 4–H Club's affirmative defenses, it alleged in its answer that Perry's claim was barred by the Indiana Equine Activity Statute.

The 4–H Club filed a motion for summary judgment based in part on the Equine Activity Statute. Following a hearing, the trial court on January 27, 2010, issued its order granting summary judgment to the 4–H Club. The trial court found and concluded in relevant part:

14. The [4–H Club] was a sponsor of an equine activity when the accident occurred.

15. [Perry] was a participant in the equine activity in her capacity as a safe

keeper when she approached the horses and was kicked.

16. The Equine Activities Act ... is applicable to this case.

17. Being kicked by a horse is an inherent risk of equine activity.

18. There is no evidence in the designation of material facts that [the 4–H Club] committed an act or omission which constituted a reckless disregard for the safety of [Perry] or that any other conditions set in [Indiana Code section] 34–31–5–2 existed at the time of the accident.

Appellant's App. at 5. Perry now appeals.

### Discussion and Decision

### I. Standard of Review

We review a summary judgment order de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001 (Ind.2009). In so doing, we stand in the same position as the trial court and must determine whether the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind. 2009). In making this determination, we construe the evidence in a light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine factual issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind.2006). Our review of a summary judgment motion is limited to those materials designated by the parties to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). The movant has the initial burden of proving the absence of a genuine factual dispute as to an outcome-determinative issue and only then must the nonmovant come forward with evidence demonstrating genuine factual is-

sues that should be resolved at trial. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind.1994).

Because this case turns on the proper application of the Equine Activity Statute, we also recite our well-established standard of review for interpretation of statutes:

> When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result.

*Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1283 (Ind.2009) (citations omitted).

### II. Equine Activity Statute

#### A. Warning Signs

 Perry argues the trial court erred in granting summary judgment because there is a genuine issue of fact as to whether the 4–H Club complied with the warning sign requirements of the Equine Activity Statute. We address this subissue first because it bears on the threshold applicability of the Equine Activity Statute as a bar to Perry's claim. *See* Ind.Code § 34–31–5–3(a) (providing "[t]his chapter does not apply unless" equine activity sponsor has posted at least one complaint warning sign). In response to Perry's argument, the 4–H Club initially

contends Perry waived the argument by not raising it to the trial court prior to the summary judgment hearing. We disagree. In general, arguments by an appellant are waived if not presented to the trial court on summary judgment, *see Cook v. Ford Motor Co.*, 913 N.E.2d 311, 322 n. 5 (Ind.Ct.App.2009), *trans. denied*, and summary judgment may not be reversed on the grounds of a genuine factual issue "unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court," T.R. 56(H). However, Perry did argue at the summary judgment hearing that the evidence designated by the 4–H Club was insufficient to establish its compliance with the warning sign requirements of the Equine Activity Statute. Moreover, this issue was already before the trial court based upon the 4–H Club's motion for summary judgment and designation of material facts.

■ Proceeding to Perry's claim, the Equine Activity Statute provides that an equine activity sponsor, as a condition precedent to immunity under the statute, must post and maintain a warning sign in at least one location "on the grounds or in the building that is the site of an equine activity." Ind.Code § 34–31–5–3(a). The sign "must be placed in a clearly visible location in proximity to the equine activity," and the warning must be printed in black letters at least one inch in height. Ind.Code § 34–31–5–3(b), (c). The warning must state: "Under Indiana law, an equine professional is not liable for an injury to, or the death of, a participant in equine activities resulting from the inher-

ent risks of equine activities." Ind.Code § 34–31–5–5.

The undisputed evidence is that the 4–H Club, on the day of the incident, maintained "Equine Activity warning signs" on all entrances to the Horse Barn, and the signs were "clearly visible." Appellant's App. at 18–19. The 4–H Club's equine activities were regularly held inside the Horse Barn, except for the Round Robin Competition held in the Show Barn located next to the Horse Barn. Perry acknowledged in her deposition she had seen "those signs" on the Horse Barn, *id.* at 114, and did not designate any evidence the signs were absent on the day of the incident or lacked the specific warning required by Indiana Code section 34–31–5–5. Perry argues, in effect, that because the only photographs the 4–H Club properly designated to the trial court do not directly show the signs contained the specific warning required,[1] the 4–H Club did not meet its burden of making a prima facie case of compliance with the statute. We decline Perry's invitation to, in effect, interpret the Equine Activity Statute to require an equine activity sponsor to submit such photographic or documentary evidence in order to support its claim of immunity. Rather, we conclude the affidavit the 4–H Club properly designated established its prima facie case that it maintained proper warning signs, such that the burden shifted to Perry to come forward with evidence the signs were deficient. Because she did not do so, there is no genuine issue of fact as to the warning signs, and the trial court

1. The parties dispute, and it is unclear from the record, whether a photograph identified as Defendant's Exhibit A at Perry's deposition, and allegedly included along with the deposition in the 4–H Club's designation of evidence, was actually part of the designated material submitted to the trial court. That photograph, unlike those included as the 4–H Club's Exhibit C in support of summary judgment and to which the 4–H Club referred at the summary judgment hearing, shows a warning sign containing the text specified in Indiana Code section 34–31–5–5.

properly concluded the Equine Activity Statute applies to this case.

### B. Inherent Risk of Equine Activities

■ Perry also argues the trial court erred in granting summary judgment because there is a genuine issue of fact as to whether her injuries resulted from an inherent risk of equine activities. The Equine Activity Statute provides:

> Subject to section 2 of this chapter, an equine activity sponsor or equine professional is not liable for:
>
> (1) an injury to a participant; or
>
> (2) the death of a participant;
>
> resulting from an inherent risk of equine activities.

Ind.Code § 34–31–5–1(a).[2] The definition of "inherent risks of equine activities" is:

> the dangers or conditions that are an integral part of equine activities, including the following:
>
> (1) The propensity of an equine to behave in ways that may result in injury, harm, or death to persons on or around the equine.
>
> (2) The unpredictability of an equine's reaction to such things as sound, sudden movement, unfamiliar objects, people, or other animals.
>
> (3) Hazards such as surface and subsurface conditions.
>
> (4) Collisions with other equines or objects.
>
> (5) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability.

Ind.Code § 34–6–2–69. The Equine Activity Statute further provides:

> Section 1 of this chapter does not prevent or limit the liability of an equine activity sponsor . . .:
>
> (1) who:
>
> (A) provided equipment or tack that was faulty and that caused the injury; and
>
> (B) knew or should have known that the equipment or tack was faulty;
>
> (2) who provided the equine and failed to make reasonable and prudent efforts based on the participant's representations of the participant's ability to:
>
> (A) determine the ability of the participant to engage safely in the equine activity; and
>
> (B) determine the ability of the participant to safely manage the particular equine;
>
> (3) who:
>
> (A) was in lawful possession and control of the land or facilities on which the participant sustained injuries; and
>
> (B) knew or should have known of the dangerous latent condition that caused the injuries;
>
> if warning signs concerning the latent dangerous condition were not conspicuously posted on the land or in the facilities;
>
> (4) who committed an act or omission that:
>
> (A) constitutes reckless disregard for the safety of the participant; and
>
> (B) caused the injury; or

---

**2.** "Equine activity," pursuant to its statutory definition, includes among other things "[e]quine shows, fairs, competitions, performances, or parades that involve equines." Ind. Code § 34–6–2–41(a). "Equine activity sponsor" means "a person who sponsors, organizes, or provides facilities for an equine activity." Ind.Code § 34–6–2–42. Perry does not dispute that the 4–H Club qualifies as an equine activity sponsor.

(5) who intentionally injured the participant.

Ind.Code § 34–31–5–2(b). As Indiana's Equine Activity Statute has not previously been interpreted in any reported case,[3] we will cite for their persuasive value the decisions of other jurisdictions that have interpreted similar statutes.

Perry's argument is that a reasonable trier of fact could find the cause of her injury was not an inherent risk of equine activities, but negligence of the 4–H Club in staging the Round Robin Competition. Perry makes no argument that any of the exceptions to immunity spelled out in Indiana Code section 34–31–5–2(b) ("Section 2(b)")—faulty equipment or tack, provision of the equine and failure to make reasonable and prudent efforts to match the participant to the particular equine and equine activity, a latent premises defect, reckless disregard, or intentional injury—apply in this case. Therefore, we must examine whether and to what extent, consistent with the Equine Activity Statute, an equine activity sponsor may be liable for simple negligence allegedly causing injury to a participant.

 Initially we note that negligence of an equine activity sponsor neither is one of the exceptions to immunity listed in Section 2(b), nor is it included in the non-exclusive list of inherent risks of equine activity under Indiana Code section 34–6–2–69. Thus, Indiana's Equine Activity Statute, like equine activity statutes in some states but unlike some others, is silent on the place of sponsor negligence in the overall scheme of equine liability.

Compare *Lawson v. Dutch Heritage Farms, Inc.,* 502 F.Supp.2d 698, 700 (N.D.Ohio 2007) (noting Ohio's Equine Activity Liability Act, like some other states', is "silent as to simple negligence as an inherent risk") (quotation omitted); *with Beattie v. Mickalich,* 486 Mich. 1060, 784 N.W.2d 38 (Mich.2010) (per curiam) (Michigan's Equine Activity Liability Act abolishes strict liability for equines but expressly provides liability is not limited " 'if the … person … [c]ommits a negligent act or omission that constitutes a proximate cause of the injury' " (quoting Mich. Comp. Laws § 691.1665)). Because it is as important to recognize what a statute does not say as what it does say, *City of Evansville v. Zirkelbach,* 662 N.E.2d 651, 654 (Ind.Ct.App.1996), *trans. denied,* and statutes granting immunity, being in derogation of the common law, are strictly construed, *see Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 281 (Ind. 1994), we conclude the Equine Activity Statute was not intended by the general assembly to abrogate the cause of action for common-law negligence of an equine activity sponsor. However, pursuant to the clear text of the statute, a negligence action is precluded if the injury resulted from an inherent risk of equine activities and the facts do not fit one of the exceptions to immunity provided by Section 2(b). Stated differently, if none of the Section 2(b) exceptions apply, then an equine activity sponsor is not liable for failing to use reasonable care to mitigate an already inherent risk of equine activities that ultimately resulted in a participant's injury.

---

**3.** In *Anderson v. Four Seasons Equestrian Center, Inc.,* 852 N.E.2d 576 (Ind.Ct.App.2006), *trans. denied,* the only reported case citing the Equine Activity Statute, this court affirmed summary judgment for the defendant on the alternative grounds of waiver and release of liability. *Id.* at 585. We concluded the waiv-

er applied because the plaintiff's fall from a horse that moved while the plaintiff was attempting to mount it resulted from a risk "inherent in the nature of the activity of horse riding." *Id.* at 584. However, we did not explicitly base that conclusion upon the text of the Equine Activity Statute.

Turning to Perry's claim, she was injured when unexpectedly kicked by a horse that became agitated during the 4–H Club's Round Robin Competition. The horse became agitated because another horse was standing too close nearby and began sniffing its rear, and to remove the danger to the child handling the other horse, Perry intervened. The statutory definition of "inherent risks of equine activities" includes, without limitation, "[t]he unpredictability of an equine's reaction to such things as sound, sudden movement, unfamiliar objects, people, or other animals," and "[t]he propensity of an equine to behave in ways that may result in injury, harm, or death to persons on or around the equine." Ind.Code § 34–6–2–69. Such risks directly caused Perry's injury, in that the horse kicked as part of an unpredictable reaction to the other horse nearby and, Perry alleges, the close quarters and unfamiliar environment of the Show Barn. See Kangas v. Perry, 239 Wis.2d 392, 620 N.W.2d 429, 433 (Wis.Ct. App.2000) (based on Wisconsin's similar definition of inherent risks, concluding "horses' propensity to move without warning is an inherent risk of equine activity contemplated by the statute"), review denied. We therefore conclude Perry's injury resulted from inherent risks of equine activities within the meaning of the Equine Activity Statute.

Perry argues the likelihood of a horse becoming agitated and kicking, and a child becoming endangered and needing to be rescued by a supervisor such as Perry, were unreasonably increased by the 4–H Club's decision to hold the Round Robin Competition in the Show Barn, a cramped space unfamiliar to the horses. Even if that is true, however, the 4–H Club's conduct would have contributed to Perry's injury only by heightening the already inherent risk that a horse might behave unpredictably and in an injury-causing manner. Thus, Perry's argument that her injury resulted not from an inherent risk of equine activities, but from the 4–H Club's negligence in its manner of staging the Round Robin Competition, amounts to hair splitting irrelevant to the Equine Activity Statute. As explained above, the statute does not require that an equine activity sponsor's alleged negligence in no way contribute to the injury complained of. Rather, the Equine Activity Statute only requires that, in order for immunity to apply, the injury must have resulted from broad categories of risk deemed integral to equine activities, regardless of whether the sponsor was negligent. See Ind.Code §§ 34–6–2–69; 34–31–5–1.

Perry also relies on cases from other jurisdictions that, while involving similar statutes, are distinguishable on their facts. In Steeg v. Baskin Family Camps, Inc., 124 S.W.3d 633 (Tex.App.2003), review dismissed, the court held summary judgment for the defendant improper where there was evidence the proximate causes of the rider's fall included the saddle slipping and the defendant's negligent failure to secure the saddle. Id. at 639–40. In Fielder v. Academy Riding Stables, 49 P.3d 349 (Colo.Ct.App.2002), cert. denied, the court held the defendant was not entitled to immunity where the defendant's wranglers negligently failed to remove a screaming child from a horse, an "obvious danger" the wranglers had notice of well before the horse bolted. Id. at 351–52. Here, by contrast, there is no evidence the 4–H Club ignored an obvious, imminent danger or that Perry's injury directly resulted from anything other than unpredictable horse behavior.

In sum, the facts viewed most favorably to Perry as the party opposing summary judgment show her injury resulted from inherent risks of equine activities and the 4–H Club was negligent, if at all, only for

failing to mitigate those inherent risks. Therefore, the trial court properly concluded the Equine Activity Statute bars Perry's claim and properly granted summary judgment to the 4–H Club.

### Conclusion

There are no genuine issues of material fact that the 4–H Club complied with the warning sign requirements of the Equine Activity Statute and that Perry's injury resulted from inherent risks of equine activities. Therefore, Perry's claim is barred by the Equine Activity Statute and the trial court properly granted summary judgment to the 4–H Club.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.