ATTORNEYS FOR APPELLANT
Vincent P. Antaki
Reminger Co., LPA
Indianapolis, Indiana

Christopher Renzulli
Renzulli Law Firm, LLP
White Plains, New York

ATTORNEYS FOR AMICUS CURIAE
NATIONAL SHOOTING SPORTS FOUNDATION
Terence M. Austgen
Elizabeth M. Bezak
James B. Vogts
Burke Costanza & Carberry LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Roger L. Pardieck
Karen M. Davis
The Pardieck Law Firm, PC
Seymour, Indiana

Michael D. Schissel
Arnold & Porter LLP
New York, New York

Jonathan E. Lowy
Brady Center to Prevent Gun Violence,
Legal Action Project
Washington, D.C.


FILED
Apr 24 2017, 3:03 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S02-1606-CT-349

KS&E SPORTS AND
EDWARD J. ELLIS,

*Appellants (Defendants below),*

v.

DWAYNE H. RUNNELS,

*Appellee (Plaintiff below).*

Interlocutory Appeal from the Marion Superior Court, No. 49D11-1312-CT-44030
The Honorable John F. Hanley, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1501-CT-42

**April 24, 2017**

**Slaughter, Justice.**

Under Indiana law, "a person may not bring an action against a firearms … seller for … recovery of damages resulting from the criminal or unlawful misuse of a firearm … by a third party." We agree with the parties that this statute is unambiguous. By its plain terms, the statute immunizes a firearms seller from a damages suit for injuries caused by another person's misuse of a firearm, regardless of whether the sale was lawful. Having previously granted transfer, we hold that Plaintiff's claims for damages must be dismissed, but his claim seeking a non-damages remedy survives. We affirm in part and reverse in part.

## Factual and Procedural History

Demetrious Martin, now deceased, was a convicted felon who could not legally purchase or possess a firearm. KS&E Sports, which is located in Indianapolis, sells firearms. In October 2011, Martin and Tarus Blackburn went to KS&E to browse. Martin had his eye on a Smith & Wesson .40 caliber handgun. In front of Blackburn and a KS&E employee, Martin identified the Smith & Wesson as a handgun he liked. The two customers eventually left the store without making a purchase.

Later that same day, Blackburn returned to KS&E and bought the Smith & Wesson Martin had identified. As the buyer of record, Blackburn completed the required paperwork and paid $325 for the gun. Just outside the store in KS&E's parking lot, Blackburn transferred the gun to Martin for $375.

Two months later, in December 2011, Martin used that same handgun to shoot Indianapolis Metropolitan Police Department officer Dwayne Runnels during a traffic stop. Officer Runnels had stopped a maroon Chevrolet Impala matching the description of a vehicle connected to a recent armed robbery and shooting. As Runnels approached the Impala, Martin got out of the car with the handgun and fired two shots at Runnels. Although Runnels sustained a gunshot wound to the hip, he was able to return fire and killed Martin. As a result of the shooting, Runnels suffered serious physical injuries and financial damages.

In May 2012, Blackburn was charged with, and later pleaded guilty to, one count of making a false and fictitious written statement in acquiring a firearm—*i.e.*, being a "straw" purchaser—in violation of 18 U.S.C. § 922(a)(6).

In December 2013, just days shy of the shootout's two-year anniversary, Runnels filed an eight-count complaint in the Marion Superior Court naming as defendants KS&E; Blackburn, who made the "straw purchase" for the firearm—that is, he posed as the buyer (the straw or middleman) of a firearm actually intended for Martin; and Edward J. Ellis, a KS&E officer, director, and shareholder. The complaint asserts various claims for negligence, conspiracy, and public nuisance.

The gist of Runnels's allegations is that KS&E proximately caused him harm by its negligent, reckless, and unlawful sale of the Smith & Wesson handgun to Blackburn, the straw buyer, and by the negligent entrustment of that firearm to Blackburn and ultimately Martin, who used it to shoot and injure Runnels. Runnels also seeks to pierce the corporate veil and hold Ellis personally liable for KS&E's wrongdoing.

KS&E and Ellis moved for judgment on the pleadings under Indiana Trial Rule 12(C), arguing Indiana Code section 34-12-3-3(2) granted them immunity and required "immediate dismissal". The statute in effect at the time of the shooting stated:

> Sec. 3. Except as provided in section 5(1) or 5(2) of this chapter, a person may not bring an action against a firearms or ammunition manufacturer, trade association, or seller for:
>
> (1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:
> (A) design;
> (B) manufacture;
> (C) marketing; or
> (D) sale;
> of a firearm or ammunition for a firearm; or
>
> (2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

Ind. Code § 34-12-3-3 (2008 Repl.). After holding a hearing, the trial court denied the 12(C) motion but granted leave to KS&E and Ellis to file an amended answer. KS&E and Ellis moved the court to

3

certify its order denying the 12(C) motion for interlocutory appeal. The trial court obliged, and the Court of Appeals accepted jurisdiction.

The Court of Appeals affirmed in a split decision generating three separate opinions. KS&E Sports v. Runnels, 66 N.E.3d 940 (Ind. Ct. App. 2016). The majority, in an opinion by Judge Riley, held under Rule 12(C) that Runnels's complaint presented valid claims, and that KS&E failed to show "that under the operative facts and allegations made in the Complaint, Runnels cannot in any way succeed" in the trial court. Id. at 949. The Court concluded that Section 34-12-3-3(2) "limits the seller's exposure to liability by barring plaintiffs from holding him accountable for the portion of damages that results from the criminal or unlawful misuse of a firearm by a third party." Id.

Judge Brown joined the Court's opinion but wrote separately to emphasize her view that Section 34-12-3-3 does not "bar actions against firearms sellers relating to their own unlawful activity." Id. at 950.

Judge Altice dissented, disagreeing with what he termed the Court's "strained" reading of the statute. Id. at 954. He characterized the majority opinion as having "relegate[d] [the statute] to a recodification of comparative fault principles". Id. For the dissent, the statute is "a quintessential immunity provision", id., that prohibits even *bringing* an action and mandates dismissal and an award of defendants' attorney's fees and costs when plaintiffs bring unauthorized actions, see I.C. § 34-12-3-4. The dissent determined that "[u]nder the plain language of the statute, KS&E cannot be found liable for the alleged harm regardless of its degree of fault." 66 N.E.3d at 956. Finally, the dissent addressed Runnels's argument that granting civil immunity to culpable gun sellers making straw sales is bad public policy. "[W]hile the legislature could have—and arguably should have—carved out an exception for straw purchases in subsection (2), it did not. The policy arguments ably advanced by Runnels and the various amici curiae, no matter how valid, should be directed to the legislature, not this court." Id. (footnote omitted).

KS&E and Ellis then sought transfer, which we granted, thereby vacating the Court of Appeals opinion. The central issue presented is whether Section 34-12-3-3(2) immunizes firearms sellers, like KS&E, from civil actions for damages resulting when a third party, like Martin, misuses

4

a firearm. Concluding that it does, regardless of the seller's culpability, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

**Standard of Review**

A motion for judgment on the pleadings under Trial Rule 12(C) tests the sufficiency of a claim or defense presented in the pleadings and should be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." Veolia Water Indianapolis, LLC v. National Trust Ins. Co., 3 N.E.3d 1, 5 (Ind. 2014) (quoting Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010)). Because we "base our ruling solely on the pleadings", id., "we accept as true the material facts alleged in the complaint". Id. When, as here, a 12(C) motion essentially argues the complaint fails to state a claim upon which relief can be granted, we treat it as a 12(B)(6) motion. Gregory & Appel, Inc. v. Duck, 459 N.E.2d 46, 49 (Ind. Ct. App. 1984). Like a trial court's 12(B)(6) ruling, we review a 12(C) ruling de novo. Veolia Water, 3 N.E.3d at 5.

This Court likewise reviews issues of statutory interpretation de novo. Ballard v. Lewis, 8 N.E.3d 190, 193 (Ind. 2014). But before interpreting a statute, we consider "whether the Legislature has spoken clearly and unambiguously on the point in question." Basileh v. Alghusain, 912 N.E.2d 814, 821 (Ind. 2009). If a statute is clear and unambiguous, we put aside various canons of statutory construction and simply "require that words and phrases be taken in their plain, ordinary, and usual sense." Id. Indeed, "[c]lear and unambiguous statutes leave no room for judicial construction." Id. We will find a statute ambiguous and open to judicial construction only if it is subject to more than one reasonable interpretation. See Ballard, 8 N.E.3d at 194; Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012).

**Discussion and Decision**

The parties agree that Section 34-12-3-3(2), which lies at the heart of this litigation, is unambiguous, but they disagree on its meaning. We conclude as follows: Section 34-12-3-3(2) unambiguously bestows immunity on KS&E to the extent Runnels seeks damages resulting from Martin's misuse of a firearm; Runnels's negligence, piercing-the-corporate-veil, and civil-

5

conspiracy claims fail Rule 12(C) review because they seek only money damages; and Runnels's public-nuisance claim survives to the extent it seeks equitable relief. Finally, we hold that federal law does not preempt this statute and reject Runnels's constitutional claims.

## I. The unambiguous statute operates as a limited immunity provision insulating a firearms seller from a suit for damages caused by a third party's misuse of a firearm, regardless of the seller's culpability.

### A. The statutory bar applies even to unlawful firearms sales.

We begin by agreeing with the parties that Section 34-12-3-3(2) is clear, unambiguous, and not susceptible to multiple interpretations. Thus, we dispense with traditional interpretative canons and read the statute according to its plain meaning. Basileh, 912 N.E.2d at 821.

By its terms, the statute bars actions against firearms sellers for "recovery of damages resulting from the criminal or unlawful misuse of a firearm … by a third party." I.C. § 34-12-3-3(2) (2008 Repl.). On its face, this provision forecloses damages claims when a third party's misuse of a firearm injures the plaintiff. Nothing in the statute limits its application to situations where a third party obtained the firearm, directly or indirectly, from a *lawful* sale.

Elsewhere in the same section, a different statutory bar applies only to "lawful" sales. "[A] person may not bring an action against a firearms … seller for … recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the *lawful* … sale … of a firearm[.]" Id. § 34-12-3-3(1)(D) (emphasis added). Thus, the legislature knows how to craft a statutory bar that applies only to sales made lawfully.

In contrast, the operative provision here—subsection 3(2)—drops the requirement that the sale be "lawful". This omission indicates the legislature was not imposing that requirement when damages result from "the criminal or unlawful misuse of a firearm … by a third party." Id. § 34-12-3-3(2). Thus, based on what this statute both says and does not say, we agree with KS&E that this bar applies even if the firearm had been sold unlawfully.

Unlike Indiana, other jurisdictions have expressly denied immunity to firearms sellers that violate the law. See, e.g., 15 U.S.C. § 7903(5)(A)(iii) (2012) (withholding immunity where firearms

6

seller "knowingly violated a State or Federal statute applicable to the sale or marketing of the [firearm], and the violation was a proximate cause of the harm for which relief is sought"); Colo. Rev. Stat. 13-21-504.5(4) (2016) (providing that firearms dealer "may be sued in tort for any damages proximately caused by an act of the … dealer in violation of a state or federal statute or regulation"). These passages reflect a clear legislative judgment to subject firearms sellers that violate the law to tort liability—which is notably absent from Indiana's statute.

### B.     The statute is an immunity provision.

We also agree with KS&E that the statute functions as an immunity provision. Section 34-12-3-3(2) does more than insulate a firearms seller from liability. It forecloses aggrieved plaintiffs from bringing suit. The statute does not mince words. If a plaintiff files a "groundless" action—*i.e.*, one that violates the statutory ban— "the court shall *dismiss* the claims or action and award to the defendant any *reasonable attorney's fee and costs* incurred in defending the claims or action." I.C. § 34-12-3-4 (2008 Repl.) (emphasis added).

Taken together, these provisions prescribe an immunity from suit. When a statute enjoins aggrieved persons from bringing suit under specified circumstances, mandates dismissal if the grievant brings suit anyway, and subjects the grievant to paying the defendant's fees and costs for non-compliance, the statute is tantamount to a grant of immunity. We share Judge Altice's view that Indiana Code chapter 34-12-3 is "a quintessential immunity provision." 66 N.E.3d at 954.

The statute's failure to use the word "immunity" does not undermine our conclusion. The legislature has enacted other immunity statutes without using that specific term. For example, the Indiana Tort Claims Act provides that governmental entities and their employees are "not liable", I.C. § 34-13-3-3 (2014 Repl.), but does not say they are *immune*. Yet we have consistently described the Act as an immunity statute and applied it accordingly. Peavler v. Board of Comm'rs of Monroe County, 528 N.E.2d 40, 42-45 (Ind. 1988) (discussing how changes to Indiana's governmental-immunity common law culminated in enactment of Indiana Tort Claims Act); City of Beech Grove v. Beloat, 50 N.E.3d 135, 138, 143 (Ind. 2016) (explaining that municipalities may be entitled to discretionary-function immunity under Indiana Tort Claims Act if they show the "challenged act or omission was a policy decision made by consciously balancing risks and benefits").

Another enactment—the Equine Activity Statute—likewise does not speak in express "immunity" terms: "a participant or participant's representative may not *make a claim* against; *maintain an action* against; or *recover from* an equine sponsor or equine professional for injury, loss, damage, or death of the participant resulting from an inherent risk of equine activities." I.C. § 34-31-5-1(b) (emphasis added). But our courts have nevertheless construed it as an immunity statute. See Einhorn v. Johnson, 996 N.E.2d 823, 828-30 (Ind. Ct. App. 2013) (holding sponsor was immune from suit under Equine Activity Statute); Perry v. Whitley County 4-H Clubs, Inc., 931 N.E.2d 933, 941 (Ind. Ct. App. 2010) (holding 4-H club was entitled to immunity under Equine Activity Statute).

To be sure, the legislature would assist our interpretive cause were it to refer expressly to "immunity" whenever bestowing it. But, as we have held, such specificity is not required. The legal analysis is more functional than formal. A statute need not use that particular term to confer an immunity if the language employed makes clear that result was the legislative goal.

### C.     The immunity conferred is limited and not absolute.

Section 34-12-3-3(2) does not confer the far-reaching immunity urged by KS&E. This statute is not an ironclad immunity against *all* claims, but only those claims seeking "recovery of damages". I.C. § 34-12-3-3(2). Thus, when the statute applies, a firearms seller is immune from *damages* claims but not *other* claims, such as those for equitable relief. The legislature knows how to insulate a seller from non-damages claims. It did so expressly in subsection 3(1), when it exempted sellers making lawful firearms sales from claims for "recovery of damages … *or injunctive relief or abatement of a nuisance*". Id. § 34-12-3-3(1) (emphasis added). The legislature's notable failure to extend the same broad immunity under subsection 3(2) when a third party misuses a firearm cannot be chalked up to oversight.

As we discuss next, we dismiss Runnels's various damages claims but not his public-nuisance claim—the only claim for which Runnels seeks equitable relief.

**II. On the present record, only the public-nuisance claim survives the immunity statute.**

Immunity is a threshold legal issue suitable for review under Rule 12(C). See Veolia, 3 N.E.3d at 5. Because Section 34-12-3-3(2) functions as an immunity statute, we turn to the pleadings. As a notice-pleading state, Indiana requires that pleadings "contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for relief." Ind. Trial Rule 8(A). In practice, this liberal standard merely requires that a "complaint . . . put the defendant on notice concerning why it is potentially liable and what it stands to lose." Noblesville Redev. Comm'n. v. Noblesville Assocs. Ltd. P'ship, 674 N.E.2d 558, 564 (Ind. 1996).

We conclude it would be premature on this record to dismiss all of Runnels's claims. Although the immunity statute applies, we cannot say there are no circumstances under which Runnels could obtain relief. Based on his complaint, Runnels may be entitled to equitable relief on the public-nuisance claim. But his other claims, which seek only damages, must be dismissed.

**A. The negligence claims do not survive because Runnels seeks only damages, and his injuries result from the unlawful misuse of a firearm by Martin, a third party.**

Runnels's complaint asserts four counts alleging KS&E was negligent: negligence (Count I), negligent entrustment (Count II), negligence per se (Count IV), and negligent hiring, training, and supervision (Count V). A recurring theme throughout his allegations is that if KS&E had followed governing law and applicable gun-sales standards, "the Smith & Wesson handgun would not have been sold to Blackburn and [Runnels] would not have been shot."

Given these allegations, KS&E enjoys immunity under subsection 3(2). Runnels alleges he sustained injuries when Martin, who had no legal right to possess the handgun, shot Runnels with it during a traffic stop. By any measure, that amounts to "criminal or unlawful misuse of a firearm … by a third party." I.C. § 34-12-3-3(2). And for the injuries he sustained, Runnels seeks only damages on these negligence counts.

Runnels cannot avoid KS&E's entitlement to immunity by arguing he seeks relief only for KS&E's *own* misconduct and not that of third parties Blackburn or Martin. Under Runnels's theory

of this case, he incurred no injury until Martin shot him. We hold under the governing immunity statute that Runnels's claims "result[] from the criminal or unlawful misuse of a firearm … by a third party", I.C. § 34-12-3-3(2), and thus are barred.

Moreover, even under generous notice-pleading standards, Runnels seeks only damages for KS&E's negligence. Runnels's catch-all prayer for "such other and further relief as the Court may deem appropriate" does not suffice to put KS&E on notice of what it stands to lose in this lawsuit—that it could be liable in equity, as well as law, for its negligence. "A complaint must be construed according to its general scope and tenor, as appears from the averments, and the prayer will not control and determine its validity." West Muncie Strawboard Co. v. Slack, 164 Ind. 21, 26, 72 N.E. 879, 880 (1904) (quoting Comegys v. Emerick, 134 Ind. 148, 152, 33 N.E. 899, 900 (1893)). And "it is well established that the allegations of a complaint cannot be changed or expanded by the prayer for relief." Jerry Alderman Ford Sales, Inc. v. Bailey, 154 Ind. App. 632, 642, 291 N.E.2d 92, 100 (1972) (citing Board of Comm'rs of LaGrange Cty. v. Cutler, 7 Ind. 6, 8 (1855)).

For each negligence claim, Runnels alleges he "suffered damages in an amount to be proven and determined at trial". Each negligence count spells out Runnels's compensable injuries requiring money damages—lost wages; past, present, and future medical expenses; and pain and suffering—but nowhere mentions equitable relief. Runnels does not seek equitable relief despite the established rule that plaintiffs may obtain such relief "if there is no appropriate money damage award to compensate [them]." City of Gary ex rel. King v. Smith & Wesson Corp., 801 N.E.2d 1222, 1246 (Ind. 2003). In City of Gary, noting the longstanding rule, we found the plaintiff's negligence claim for injunctive relief "viable" because, in part, the complaint sought compensatory and punitive damages and injunctive relief for all claims. Id. at 1228, 1246.

Based on his complaint, Runnels's negligence claims are for damages not equitable relief. We dismiss these claims under subsection 3(2).

10

**B. The civil-conspiracy claim does not survive because Martin is not alleged to be part of the conspiracy, the conspiracy's scope extends only to straw sales and not misuse of a firearm, and Runnels seeks only damages.**

For similar reasons, the civil-conspiracy claim fares no better. Count VI alleges that Runnels sustained injuries resulting from a civil conspiracy among KS&E, its owners, employees, and Blackburn to "unlawfully and unreasonably sell firearms" to make a profit. The problem for Runnels is three-fold. First, he does not allege Martin is part of the conspiracy. Second, the conspiracy Runnels does allege is to boost KS&E's profits by making unlawful gun sales, not to enable third parties to misuse firearms. Third, the relief Runnels seeks is damages.

Under Indiana law, there are no "third parties" to a conspiracy. "[E]ach participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful or contemptuous acts regardless of the degree of active participation." Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL-CIO, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986) (quoting Bottoms v. B & M Coal Corp., 405 N.E.2d 82, 90 (Ind. Ct. App. 1980)). All co-conspirators are thus "first parties". But Martin is not a co-conspirator here. Runnels does not allege Martin is part of the unlawful agreement with KS&E. Thus, as to KS&E, Martin remains a *third party* for purposes of the alleged conspiracy.

Even if Martin were a co-conspirator, the conspiracy's alleged aim is limited—to "unlawfully and unreasonably sell firearms without exercising ordinary care in order to make a profit", not to enable Martin to misuse the firearm he acquired from the unlawful straw sale. Thus, Martin would remain a "third party" vis-à-vis KS&E concerning the action giving rise to Runnels's injuries—namely, Martin's misuse of the Smith & Wesson handgun in shooting Runnels.

Like the negligence claims, the conspiracy claim seeks only damages. Thus, the immunity from "recovery of damages resulting from the criminal or unlawful misuse of a firearm … by a third party", I.C. § 34-12-3-3(2), squarely applies here, and the conspiracy claim must also be dismissed.

**C. The public-nuisance claim survives to the extent Runnels seeks to enjoin or abate a nuisance.**

Count VII alleges that KS&E "caused, created, and maintains substantial and unreasonable interference with the public's health, safety, convenience, comfort, peace, and use of public property

11

and/or private property" and thus constitutes a public nuisance. Runnels requests damages and an order "enjoining or abating the public nuisance . . . until [KS&E] modifies its deficient sales, training, and marketing policies governing the sale of firearms, and retrains its employee(s), to reasonably and adequately minimize the risk that criminal[s], juveniles, and other prohibited and/or dangerous persons will obtain firearms from KS&E". This claim survives because Runnels sufficiently pleads a public nuisance and seeks equitable relief.

By statute, Indiana defines a nuisance and affords a cause of action against it. "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." I.C. § 32-30-6-6 (2008 Repl.). Plaintiffs may bring "[a]n action to abate or enjoin a nuisance" if their "property is injuriously affected" or their "personal enjoyment is lessened" by the nuisance. Id. § 32-30-6-7(a). Possible remedies include enjoining or abating the nuisance and recovering damages. Id. § 32-30-6-8.

In City of Gary, we interpreted our public-nuisance statutes in connection with lawsuits against firearms manufacturers, distributors, and dealers and held the plaintiff could bring a public-nuisance action against these defendants for their alleged illegal straw sales.

> The City alleges that the [firearm] dealer-defendants have participated in straw purchases and other unlawful retail transactions, and that manufacturers and distributors have intentionally ignored these unlawful transactions. The result is a large number of handguns in the hands of persons who present a substantial danger to public safety in the City of Gary. Taken as true, these allegations are sufficient to allege an unreasonable chain of distribution of handguns sufficient to give rise to a public nuisance generated by all defendants.

801 N.E.2d at 1241 (citations omitted).

Runnels makes similar allegations here. He alleges KS&E engaged in negligent and illegal business practices, including straw purchases, that flooded the streets with guns used in crimes. Between 1996 and 2000, KS&E allegedly sold at least 529 guns traced to and recovered from crimes, making it "the 34th top crime-gun seller in the nation" during that period. These allegations sufficiently plead a claim for public nuisance.

12

We specifically reject KS&E's argument that Runnels's public-nuisance claim for injunctive relief is barred by Section 34-12-3-5(3), which provides:

> Nothing in this chapter may be construed to prohibit a person from bringing an action against a firearms . . . seller for recovery of damages for the following: (3) Injunctive relief to enforce a valid statute, rule, or ordinance. However, a person may not bring an action seeking injunctive relief if that action is barred under section 3 of this chapter.

I.C. § 34-12-3-5 (2008 Repl.). According to KS&E, Runnels's public-nuisance claim is barred under Section 34-12-3-3 and thus is necessarily prohibited under Section 5. We disagree. Section 3 does not bar the public-nuisance claim. Subsection 3(1) is no obstacle because his claim asserts a public nuisance based on unlawful sales. And subsection 3(2) does not stand in the way to the extent the claim seeks equitable relief. Thus, the public-nuisance claim's request for equitable relief survives Rule 12(C).

### D. The pierce-the-corporate-veil "claim" does not survive because KS&E's immunity means Ellis faces no damages liability.

Count VIII seeks to pierce the corporate veil and hold Ellis—KS&E's "owner"—personally liable for the company's wrongdoing. Under Indiana law, a necessary predicate to piercing the corporate veil is corporate liability that can be funneled to shareholders. See generally Aronson v. Price, 644 N.E.2d 864, 867 (Ind. 1994). But as we have explained, damages from KS&E are unavailable under subsection 3(2), so there can be no money judgment against the company for which Ellis can be held personally liable. Thus, piercing the corporate veil is unwarranted, and this claim does not survive Rule 12(C) review.

## III. Section 34-12-3-3 is neither preempted by federal law nor unconstitutional.

Runnels raises alternative arguments focusing on preemption and constitutionality in case we interpret Section 34-12-3-3(2) to bestow firearms sellers with blanket immunity. But as discussed, we do not read subsection 3(2) that way. The statute provides a *limited* immunity, for damages claims, but not for claims seeking other relief. Thus, although Runnels's premise for addressing these additional arguments does not apply, we nevertheless consider them and conclude they lack merit.

## A.    The statute is not preempted by federal law.

Runnels argues that federal law—specifically, the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901 *et seq.*—preempts Section 34-12-3-3(2). Like our statute, the PLCAA precludes certain civil actions against firearms manufacturers, distributors, and retailers when injury results from third-party misuse of a firearm. 15 U.S.C. §§ 7902(a), 7903(5)(A). Unlike our statute, however, the PLCAA does not bar civil actions against firearms sellers for harm resulting from their *own* negligence or wrongdoing. 15 U.S.C. §§ 7903(5)(A)(ii), (iii). Runnels argues these federal exceptions preempt subsection 3(2) and foreclose Indiana from granting additional immunity from suit for culpable firearms sellers. Runnels cites two statements from United States Senators Craig and Hatch in support of his argument that Congress intended the PLCAA to preempt state laws. We disagree and hold that the PLCAA does not preempt subsection 3(2).

Our preemption analysis starts with a presumption against preemption. Kennedy Tank & Mfg. Co. v. Emmert Indus. Corp., 67 N.E.3d 1025, 1028 (Ind. 2017) (citing Bond v. United States, 134 S. Ct. 2077, 2088 (2014)). Thus, we presume "federal statutes do not preempt state law", id., and "find preemption only if it is 'the clear and manifest purpose of Congress,'" 67 N.E.3d at 1028 (quoting Arizona v. United States, 132 S. Ct. 2492, 2501 (2012)). Runnels bears the burden of showing Congress's clear and manifest purpose for preempting state law. He has not met that burden.

Runnels does not argue Congress preempted state firearms-immunity laws expressly. Rather, he contends their preemption is implied under the twin doctrines of field and conflict preemption. Field preemption applies when federal regulation is so extensive it may be inferred Congress intended to occupy the entire legislative field. Arizona, 132 S. Ct. at 2501. Conflict preemption applies when it is "physically impossible" to comply with both the state and federal laws and when state law does "major damage" to the federal law's purpose. Kennedy Tank, 67 N.E.3d at 1029 (citations omitted). We hold neither doctrine applies here to preempt subsection 3(2).

There is no field preemption. The PLCAA is not a comprehensive regulatory scheme. Of relevance here, it prohibits would-be plaintiffs from bringing lawsuits against firearms sellers under certain circumstances. But neither the statute's terms nor its scope implies Congress intended to

14

foreclose states from providing greater protection to firearms sellers. States like Indiana remain free to provide immunity from actions not prohibited by the PLCAA.

Nor is there conflict preemption. The PLCAA's plain language and stated purpose are to protect sellers from liability when third parties misuse firearms, 15 U.S.C. § 7901(a)(5), and to "preserve and protect … important principles of federalism[ and] State sovereignty", id. § 7901(b)(6). Section 34-12-3-3(2) does no damage, let alone "major damage", to those purposes. And it is not impossible for these two statutes—the PLCAA and Section 34-12-3-3(2)—to operate in tandem. Because we cannot say Congress clearly and manifestly intended the PLCAA to preempt state law, we find no preemption here.

### B.    Runnels's constitutional arguments are without merit.

We turn, finally, to Runnels's constitutional arguments and hold they, too, lack merit.

### 1.    No open-courts violation

Runnels argues, first, that subsection 3(2) violates Article 1, Section 12 of the Indiana Constitution—the Open Courts Clause, which provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." As we have explained, "the Open Courts clause does not prohibit all conditions on access to the courts, but it does prevent the legislature from arbitrarily or unreasonably denying access to the courts." Smith v. Indiana Dep't. of Corr., 883 N.E.2d 802, 808 (Ind. 2008). Runnels argues subsection 3(2) deprives him of access to the courts and represents an irrational law furthering an illegitimate purpose, making it unconstitutional.

In considering this and other challenges, we note that "every statute stands before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing." Meredith v. Pence, 984 N.E.2d 1213, 1218 (Ind. 2013) (quoting Baldwin v. Reagan, 715 N.E.2d 332, 338 (Ind. 1999)). Runnels, as the party challenging the statute's constitutionality, bears the burden of proof, and we resolve all doubts against him. 984 N.E.2d at 1218 (quoting State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992)). Runnels does not meet his burden here.

The right of access presupposes an underlying cause of action to which the right of access attaches and for which the law affords a remedy. The legislature has wide latitude in defining the existence and scope of a cause of action and in prescribing the available remedy. In McIntosh v. Melroe Co., 729 N.E.2d 972 (Ind. 2000), we reaffirmed the legislature's longstanding prerogative "to modify or abrogate the common law." Id. at 977 (citations omitted). An important corollary is that "[i]f the law provides no remedy, [Article 1,] Section 12 does not require that there be one." Id. at 979.

The legislature, in its discretion, afforded plaintiffs like Runnels a right of access in these cases, albeit through limited causes of action and limited recoveries. And on this record, Runnels has both a cause of action and remedy. He can still seek equitable relief on the public-nuisance claim to prevent what he asserts is KS&E's serial practice of "negligently, recklessly, and/or intentionally selling vast quantities of firearms in a manner that ensures a steady flow of firearms in large quantities to illegal traffickers, the illegal secondary market, criminals, juveniles, and others prohibited by law from having firearms". Just because the legislature has foreclosed a damages recovery against firearms sellers in specified circumstances does not mean Runnels has been denied access to the courts. The legislature's policy choice to bar damages suits against such sellers for injuries resulting from a third party's misuse of a firearm is within its broad discretion. We cannot say its choice was irrational or illegitimate.

### 2.    No violation of equal privileges and immunities

Next, Runnels argues subsection 3(2) violates Article 1, Section 23 of the Indiana Constitution, which provides "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Runnels objects that the statute singles out culpable gun sellers for immunity and thus "consign[s]" their victims "to the status of second-class citizens, without rights for civil redress." It is not rational, he maintains, to treat sellers of firearms differently than sellers of, say, knives.

We review equal-privileges-and-immunities challenges under a two-part standard. "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly

16

applicable and equally available to all persons similarly situated." <u>Collins v. Day</u>, 644 N.E.2d 72, 80 (Ind. 1994). We accord the legislature substantial deference when making classifications and require the plaintiff to "negate every conceivable basis which might have supported the classification." <u>Whistle Stop Inn, Inc. v. City of Indianapolis</u>, 51 N.E.3d 195, 199 (Ind. 2016) (citation and brackets omitted).

Runnels has not negated every conceivable basis for treating gun sellers more favorably than sellers of other weapons. We do not know what motivated our legislature's enactment of subsection 3(2). One explanation may be that the legislature, like Congress when it enacted the PLCAA, perceived that recent lawsuits against the firearms industry threatened its stability and jeopardized the continued availability of firearms even to law-abiding citizens wishing to exercise their Second Amendment rights. This rationale would provide a reasonable basis for treating sellers of firearms, which face such litigation threats, differently than sellers of knives, which do not. The statute does not violate Article 1, Section 23.

### 3.     No violation of due process

Lastly, Runnels argues the statute, if "interpreted to immunize gun sellers from all claims, including when the gun seller engaged in illegal conduct, . . . would also be unconstitutional under the Due Process Clause of the Fourteenth Amendment." This argument also fails. As noted, the statute does not immunize gun sellers from *all* claims. Runnels can still prosecute his public-nuisance claim and obtain equitable relief.

What is more, a threshold due-process inquiry is whether the claimant has a "protectable interest" at stake. <u>McIntosh</u>, 729 N.E.2d at 975 (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71 (1972)). Runnels suggests he has just such an interest here—a common-law cause of action and remedy—that the statute took away. But "as a matter of federal constitutional law, no person has a vested interest or property right in any rule of common law." <u>Cheatham v. Pohle</u>, 789 N.E.2d 467, 471–72 (Ind. 2003) (citing <u>Munn v. Illinois</u>, 94 U.S. 113, 134 (1876)). The statute predates Runnels's claim, so this is not a case where he acquired a property interest in an accrued cause of action, only to have a subsequent statute take it away. Finding no protectable interest here, we find no violation of due process.

\* \* \*

Our role here is confined to interpreting the statute, consistent with its plain meaning, by giving effect to what the legislature both said and did not say. We have read Section 34-12-3-3(2) in a way neither side advanced—an immunity from suit for culpable firearms sellers, contrary to Runnels's argument; but a limited immunity extending only to damages actions, contrary to KS&E's. The legislature's policy choices, so long as they are constitutional, are beyond our purview. We neither applaud the wisdom of such choices nor condemn their folly. We simply assess their legality. Once we determine they pass muster, our task concludes. Having thus interpreted the statute, we conclude it falls within the legislature's broad discretion and does not run afoul of either state or federal Constitution.

Of course, there may be other legal recourse against KS&E for its alleged straw sales, including criminal prosecution and regulatory challenges to its authority to sell firearms in interstate commerce. But the availability of any such enforcement action has no bearing on today's holding, which concerns a tort action against a seller of firearms for damages resulting from a third party's misuse of a firearm.

**Conclusion**

We hold that Indiana Code section 34-12-3-3(2) is unambiguous and functions as a limited immunity statute that insulates KS&E from suits for "recovery of damages resulting from the criminal or unlawful misuse of a firearm . . . by a third party." Thus, Runnels's negligence, piercing-the-corporate-veil, and civil-conspiracy claims, which demand only money damages, must be dismissed. Section 34-12-3-3(2), however, does not immunize KS&E from Runnels's public-nuisance claim seeking equitable relief. That claim survives and may proceed. Finally, we conclude the statute is not preempted by federal law and does not violate either state or federal Constitution. We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

David and Massa, JJ., concur.

Rucker, J., concurs in part and dissents in part with separate opinion in which Rush, C.J., concurs.

18

**Rucker, J., concurring in part, dissenting in part.**

I agree the trial court erred in denying KS&E Sports' motion for judgment on the pleadings. Such a motion should be granted "where it is clear from the face of the complaint that under no circumstances could relief be granted." Slip op. at 5 (citations omitted). Here, although the facts in the complaint are detailed and comprehensively worded, they fail to suggest a critical point in my view, namely: that KS&E Sports knew or should have known that Martin was a convicted felon, prohibited by federal law from purchasing or possessing firearms. On this narrow point, I concur.

However, I part company with my colleagues on their expansive reading of the statute. Consider the following hypothetical: Two men walk into a gun store. Person #1 tells the proprietor, "I am wanting to buy a firearm for my friend here who is a convicted felon who cannot lawfully purchase a firearm. My record is clean." Person #2 confirms he is a convicted felon and tells the store owner, "I intend to go on a shooting spree." The purchase is consummated and the next day the convicted felon goes out and wreaks havoc on an elementary school and wounds first responders in the process.

In the majority's view the gun store would be immune from civil liability and not accountable in civil court to the victims of the shooting. This is so, according to the majority, because "[t]he unambiguous statute operates as a limited immunity provision insulating a firearms seller from a suit for damages caused by a third party's misuse of a firearm, *regardless of the seller's culpability.*" Slip op. at 6 (emphasis added).

I am not persuaded and cannot believe the legislature intended immunity under the facts posed by the hypothetical. It appears to me the statute was designed to protect innocent and unknowing gun sellers from the acts of third parties. The legislature could not have intended to protect gun sellers from their own illegal acts. On this point, I respectfully dissent.

Rush, C.J., concurs.